[Civ. No. 18822. First Dist., Div. One. May 25, 1961.]

FIREMAN'S FUND INDEMNITY COMPANY (a Corporation), Respondent, v. PRUDENTIAL ASSURANCE COMPANY, LTD., Appellant.

Hardin, Fletcher, Cook & Hayes and Cyril Viadro for Appellant.

Bronson, Bronson & McKinnon for Respondent.

TOBRINER, J.—We face here the increasingly common situation in which two insurance companies, both having insured against the loss incurred, attempt to construe their respective policies in such a manner that each claims non-liability until all other insurers have paid their full coverage toward the loss. In this instance, however, we fail to find in appellant's policy a clear provision that "other insurance," including respondent's, be paid in advance of appellant's own liability. In contrast, respondent's policy did include such a valid "other insurance" clause. We therefore have concluded that the trial court properly held that appellant's policy did not set out an effective "other insurance" clause.

The parties submitted an agreed statement of facts, which discloses that on or about May 6, 1955, an accident occurred involving a truck owned by D. W. Groom, hired by Fred Holm, and driven by Harry Walker with the permission of both the owner and lessee. At the time of the accident three insurance policies were in effect, all of which covered the driver as an additional insured.

The three insurers settled with the injured parties, paying settlements of $30,000 and $125,000. The owner's primary insurer, Maryland Casualty Company (hereinafter called "Maryland"), conceded its liability and paid the limits of its policy, $30,000. Respondent, Fireman's Fund Indemnity Company (hereinafter called "Fireman's"), the lessee's in-

surer, and appellant, Prudential Assurance Company, Ltd. (hereinafter called "Prudential"), which had issued a policy to the owner which was specifically excess over Maryland's, contributed to the settlement but reserved their rights to dispute their liability as between themselves.

Respondent's policy, insuring the lessee for limits of $100,000/$200,000, contained the following "other insurance" clause: "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired or non-owned automobile shall be *excess insurance over any other valid and collectible insurance available to the insured. . . .*" (Emphasis added.)

Appellant's policy, issued to the owner of the truck, referred to Maryland as the " 'Primary Insurers' " and Maryland's policy as the "underlying policy." It provided "that liability shall attach to the Underwriters *only after the Primary Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability. . . .*" (Emphasis added.) The policy further defined "ultimate net loss" to mean "the sums paid in settlement of losses for which the Assured is liable after making *deductions for all* recoveries, salvages and *other insurances . . . whether recoverable or not. . . .*" (Emphasis added.)

Maryland properly conceded primary liability even though its policy called for proration with other insurance. In *American Automobile Ins. Co.* v. *Republic Indemnity Co.* (1959), 52 Cal.2d 507 [341 P.2d 675], the Supreme Court considered two policies, one insuring the owner and the other the driver, each containing clauses providing for proration with other insurance except when the insured drove a non-owned automobile, in which case the insurance was excess. The court declared, "the cases have generally given effect to the excess provision in the policy of the driver and have held that the insurer of the owner is primarily liable and must bear the whole loss, within the limits of its policy. [Citations.]" (P. 512.) (Accord: *Firemen's Ins. Co.* v. *Continental Cas. Co.* (1959), 170 Cal.App.2d 698 [339 P.2d 602].)

Respondent subsequently brought this action for a declaratory judgment claiming that its policy was excess over both Maryland's and appellant's. Appellant likewise asserted that the ultimate net loss provision of its policy constituted an "excess" insurance clause which insulated it from liability until the payment of all other insurance, including the coverage provided by respondent. The trial court determined from its reading of appellant's policy that "[t]he definition of 'ultimate net loss' . . . does not, and was not intended to, constitute an 'other insurance' clause, nor does such definition, or any other provision in . . . [appellant's] policy, have the effect of making the insurance provided . . . excess insurance over and above" the insurance under respondent's policy. The court held that therefore "[w]hen Maryland . . . paid out and exhausted the limits of liability set forth in its policy, Prudential . . . became obligated and responsible for the payment . . . of all amounts up to the limits of liability contained in its policy. . . ."

Our analysis convinces us that, despite appellant's contention that its policy was "excess" over all other insurance, the policy did not so provide. The language of the policy fails to state clearly and unequivocally that its liability attached only after imposition of liability upon respondent. To explain the grounds for this conclusion we shall inspect the clauses of appellant's policy; we shall then develop other difficulties that beset appellant's attempted construction; finally, we shall point out that the cases upon which appellant relies actually do not support its position.

There can be little doubt that the overall purpose of appellant's policy was to increase Maryland's liability from $15,000/$30,000 to $50,000/$100,000; it declares that it intends to provide coverage under the "combined" policies. Appellant's liability attaches "only after the Primary Insurers [Maryland] have paid or have been held liable to pay the full amount of their [Maryland's] respective ultimate net loss. . . ." The "ultimate net loss," which is necessarily Maryland's, means "the sums paid in settlement of losses for which the Assured is liable after making deductions for all recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurers), whether recoverable or not. . . ." Once Maryland pays its full amount of coverage, after deducting the amounts contributed, or which should have been contributed by other insurers, appel-

lant's liability attaches. Maryland paid, and was required to pay without contribution (*American Automobile Ins. Co.* v. *Republic Indemnity Co., supra,* 52 Cal.2d 507), its ultimate net loss, and the policy then immediately invoked appellant's liability.

The clause under which appellant would entail respondent's policy as "other insurance" refers to other insurance which *Maryland* can enlist. If Maryland can reduce its loss by means of other insurance, appellant gets that benefit. But Maryland is the conduit, and if the conduit is blocked, appellant fails. *Here Maryland obtained no benefit from other insurance; it could not reach out to any other insurance to reduce its loss; Maryland was itself directly liable as the primary insurer; Maryland paid its $30,000.* The force of the clause was thus expended at the Maryland level; it did not embrace any "other insurance" than that which Maryland could claim; it is literally ineffective to impose liability upon respondent.

Two other difficulties emanate from the construction of the policy urged by appellant and throw doubt upon it.

In the first place, appellant seeks to derive a double benefit from the ultimate net loss clause. It would fix Maryland's ultimate net loss under it and deduct from its liability all other insurance. It would also fix its own ultimate net loss under it, claiming the benefit of all other insurance. Such a double performance suggests a strained construction of the provision.

In the second place, the full enforcement of the provision could conceivably result in denial of insurance protection to the insured. The clause calls for the deduction of other insurance "whether recoverable or not. . . ." In this respect appellant's policy differs from respondent's, which merely provides that it is excess over and above other "valid and collectible insurance. . . ." If appellant's provision did allow it to escape from liability by attempting to deduct other nonrecoverable insurance, the courts probably would refuse to enforce it; "the decisions in general show favor of excess clauses, disfavor of escape clauses." (*Peerless Cas. Co.* v. *Continental Cas. Co.* (1956), 144 Cal.App.2d 617, 623 [301 P.2d 602] ; quoted in *Firemen's Ins. Co.* v. *Continental Cas. Co., supra,* 170 CalApp.2d 698, 703.) (See the following cases giving effect to "excess" clauses: *Continental Casualty Co.* v. *Curtis Pub. Co.* (3d Cir., 1938), 94 F.2d 710; *Michigan Alkali*

*Co.* v. *Bankers Indemnity Ins. Co.* (2d Cir., 1939), 103 F.2d 345; *Zurich General Accident & Liability Ins. Co.* v. *Clamor* (7th Cir., 1941), 124 F.2d 717; *Travelers Indemnity Co.* v. *State Automobile Ins. Co.* (1941), 67 Ohio App. 457 [37 N.E.2d 198]; *Grasberger* v. *Liebert & Obert, Inc.* (1939), 335 Pa. 491 [6 A.2d 925, 122 A.L.R. 1201]; 46 A.L.R.2d 1163.)

Nevertheless appellant asks us to interpret the clause to embrace any insurance covering the loss whether or not it contributes to Maryland's loss. To reach appellant's construction of the instant policy we must, in effect, both rely upon and ignore the escape words, "or not," of the policy. We doubt that the company that drafts the alleged excess clause should be permitted to render it effective by also using its escape features. The burden should fall upon the draftsman to compose a clause which as written makes clear to the insured the liabilities of the policy.

We conclude, then, that appellant's policy does not contain a precise other insurance provision applicable to *all* other insurance but a limited declaration applicable solely to the *primary insurer's* other insurance. At best the provision is ambiguous and unclear. In the bewildering complexity of modern insurance policies, which contain legions of clauses that confuse and baffle the insured, we question whether carriers should garner any benefit from occult provisions. Where clarity is so important and simplicity so long delayed, we shall not reward ambiguity.

Appellant contends, finally, that the cases support its contention that the clause provides that "other insurance" must first be deducted and that, accordingly, recourse to appellant occurs only after respondent's policy limits have been exhausted. Such a result might follow if Maryland's and respondent's policies contained proration provisions as to this loss. In such a situation the limits of Maryland's would not be reached until the exhaustion of respondent's limits. Since appellant's policy is contingent upon full payment by Maryland, appellant's policy would not attach in such a situation until completion of the proration. As we shall point out, the cited cases fall into this category. Since the clause before us provides that appellant's liability attaches upon a determination of Maryland's net loss, and does not provide for such proration, the provision contrasts with those of the cited cases.

To support its position appellant relies upon three cases:

*Lamb* v. *Belt Casualty Co.* (1935), 3 Cal.App.2d 624 [40 P.2d 311] ; *Oil Base, Inc.* v. *Transport Indem. Co.* (1956), 143 Cal. App.2d 453 [299 P.2d 952] ; *Peerless Cas. Co.* v. *Continental Cas. Co., supra,* 144 Cal.App.2d 617. These cases require the primary insurers to prorate the loss ; they hold that the excess insurance over the primary policies does not come into play until after the exhaustion of the primary insurance. In our case, however, Maryland could not properly urge proration with Fireman's. Upon the exhaustion of Maryland's limits, the policy provided, as we have shown, that the Prudential policy attached.

In *Peerless Cas. Co.* v. *Continental Cas. Co., supra,* 144 Cal. App.2d 617, as in this case, the court construed three policies : (1) a policy issued by Peerless to the owner of the involved vehicle with limits of $5,000 for property damage, (2) a policy issued by Continental to the lessee with a $25,000 property limit, and (3) a Lloyd's policy issued to the owner which provided excess coverage "after exhaustion of the coverage of the above Peerless policy, to which specific reference was made," with a limit of "$20,000 for property damage (after the $5,000 of the Peerless policy). . . ." (P. 619.) Each of the named policies covered the driver of the vehicle as an additional insured. Peerless and Lloyd's settled the claims, paying $6,053.40 for property damage, but each reserving their right to dispute such payment as between the insurers.

Lloyd's policy in that case read substantially the same as Prudential's [appellant's] in the present case, referring to the primary insurer, Peerless, and making its coverage excess over Peerless' "ultimate net loss." Ultimate net loss was defined as " 'sums paid in settlement of losses for which the Assured is liable *after making deductions for all recoveries* . . . and other insurances . . . *whether recoverable or not.* . . .' " (P. 624 ; emphasis partly added.) Liability of Lloyd's was not to attach until Peerless had paid its $5,000 limit for property losses.

Continental's [insurer of lessee, in same position as respondent] policy contained an "other insurance" clause which the court construed as an "excess" clause. Peerless' [the primary insurer of owner, in same position as Maryland] "other insurance" clause provided for "proration," reading : " 'If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limits of

liability stated in the declaration bear to the total applicable limit of liability of all valid and collectible insurance against such loss. . . .' '' (P. 620.)

The appellate court affirmed the trial court's holding ''that Peerless [primary insurer of owner] and Continental [primary insurer of lessee] were liable for the total amounts of the settlements in proportion of the maximum coverage provided by their respective policies'' and that Lloyd's was ''not liable on its policies'' (p. 620), and concluded: ''[W]hen a policy [Lloyd's] which provides excess insurance above a stated amount of primary insurance contains provisions which make it also excess insurance above all other insurance *which contributes* to the payment of the loss together with the specifically stated primary insurance, such clause will be given effect as written. Under this rule the first Lloyd's policy did not attach *because the prorating* of the Continental and Peerless policies *prevented the Peerless policy from being exhausted.*'' (P. 626; emphasis added.) Thus, in a case of ''prorate'' versus ''excess'' provisions, the court held that, as between primary insurers, such insurers should prorate the loss; the excess insurance over and above one of the primary policies does not attach until its primary insurance is exhausted. Assuming the validity of the solution of proration between the insurance of the lessee and the owner as held in *Peerless,* we believe that the subsequent case of *American Automobile Ins. Co.* v. *Republic Indemnity Co., supra,* 52 Cal. 2d 507, has precluded any such proration arrangement in our case; indeed, in our case all parties have conceded Maryland's primary liability without proration.

Similarly, in *Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App. 2d 624, three insurance companies disputed their liability. Company A insured a truck, providing in the policy that if there were insurance which would attach if its policy did not exist, its policy did not cover it. The clause carried the proviso that if another policy concurrently covered a claim under property damage or liability, Company A would apportion liability. Company B insured a trailer, stating that if other insurance were applicable, the loss should be prorated. Lloyd's provided excess insurance on the trailer over and above Company B. An accident occurred involving both the truck and the attached trailer. The judgments, amounting to $14,632.07, established ''the liability of the insured arising out of the operation of both the truck and the trailer'' and were ''con-

clusive as against the insurer on each vehicle," but did not express the proportion of liability. (P. 632.) The appellate court determined that since Company A had "insured against the liability concurrently" with Company B "within the limits of its policy," the Lloyd's policy never attached. (P. 634.) Thus, the court affirmed the apportionment of liability. As in *Peerless* the liability of Lloyd's primary insurer was never exhausted. Therefore *Lamb* does not apply to the present case.

*Oil Base, Inc.* v. *Transport Indem. Co., supra,* 143 Cal.App. 2d 453, while authority for proration as between two policies, each containing an other insurance clause providing that its coverage shall be excess over all other insurance, does not hold that an excess insurer is necessarily excess over *all* insurance. It merely provides, as does *Peerless,* that excess policies do not attach until the coverage of all primary insurers has been exhausted.

The situation in *Oil Base* involved four insurance policies and three insurers. Southwest leased equipment to Mercury who subleased it to Oil Base. An accident occurred involving the equipment and Mercury's employee during the time it was leased to Oil Base. Four insurance policies were in effect. Both Hardware and Transport (policy No. 12-101) insured Oil Base as a named insured. Security's policy was specifically excess over Transport's Number 12-101 and listed Oil Base as an insured. Transport's policy Number 12-102 was excess over both Security's and Transport's Number 12-101. Both the Hardware and Transport Number 12-101 policies included "other insurance" clauses; Hardware's stated that its policy should be "excess" over "other valid and collectible insurance" when the vehicle was nonowned; Transport's policy Number 12-101 stated that its insurance was "excess" over other insurance. (P. 467.) The appellate court held that both policies said "'the same thing'"; therefore, the insurers should "prorate the loss between the two policies up to their respective limits of liability [citations]." (Pp. 467-468.)

The court further held that the excess policies, the Security policy and Transport Number 12-102, attached after the coverage of the two primary policies had been exhausted, not because the excess policies had other insurance clauses holding them to be excess, but because they were excess policies. Thus, "Security's policy did not attach . . . until not only . . . Transport's policy Number 12-101 had been exhausted but

until any insurance purchased by the insured for a greater amount than $10,000 had been exhausted. Oil Base was . . . a named insured in the Security policy, and the Hardware policy constituted insurance purchased by it in addition to the insurance provided to it by Transport's policy Number 12-101. Transport's policy Number 12-102 did not attach . . . until the insurance provided by its policy Number 12-101 and Security's policy had been fully utilized." (P. 468.) Since "neither of those policies was exhausted until the indemnity provided by the Hardware policy had been applied to the loss" (p. 468), policy No. 12-102 was the last to attach.

In the instant case Maryland, the primary insurer of the owner, paid its full coverage. Fireman's was excess due to its "other insurance" clause. Prudential's policy was an excess policy and could not attach until Maryland, and any insurance with which Maryland could prorate, had paid. Since Maryland could not insist on proration from Fireman's, and since its own policy coverage had been exhausted, Prudential's policy could then attach.

Appellant urges an interpretation of a provision as an "other insurance" clause, applicable to all other insurance, which appellant itself drafted, and which does not specifically so provide. The confusion which these clauses engenders fastens upon the draftsman the obligation of writing a provision which is unequivocal. If the company would limit its liability by the interposition of "other insurance," it should at least define the "other insurance."

While the contention that the liability of the two insurers should be prorated has been urged, and offers an easier, and perhaps more balanced, solution, we cannot ignore the language of the Prudential policy nor its failure, if it wanted the benefit of an excess clause, to write a clear one. As we read the policy, we cannot, in the scrutiny of careful construction, find that provision. The responsibility for the lack of such definition lies with appellant.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied June 21, 1961, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1961.