[Civ. No. 20211. First Dist., Div. One. Feb. 18, 1963.]

CONTINENTAL CASUALTY COMPANY, Plaintiff and Appellant, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Defendants and Respondents.

Carroll, Davis, Burdick & McDonough and J. D. Burdick for Plaintiff and Appellant.

Hadsell, Murman & Bishop, Bacon, Mundhenk, Stone & O'Brien, Herbert Chamberlin, Bishop, Murray & Barry and Michael J. Murray for Defendants and Respondents.

SULLIVAN, J.—We are presented with a question of liability deriving from conflicting "other insurance" clauses in three separately issued policies of automobile liability insurance. Briefly stated, our inquiry is as to whether in the instance at hand the policies provided for primary or excess insurance. We have concluded that the matter before us is governed by our decision in *Athey* v. *Netherlands Ins. Co.* (1962) 200 Cal.App.2d 10 [19 Cal.Rptr. 89], that all three policies provide for excess insurance and that the judgment appealed from should be reversed.

The parties have agreed upon the facts. One James R. Corcoran, Jr. rented an automobile from Paul J. Muldoon, doing business as the Peninsula Lease Company. Corcoran, a resident of Massachusetts, was an executive of Fenwal, Inc., a firm located in that state, and was reimbursed by Fenwal for the rental charge which included a charge for insurance. While driving the rented automobile in the scope of his employment by Fenwal, Corcoran became involved in an accident as a result of which one Victoria Pucci suffered personal injuries and property damage. The latter commenced an action against Corcoran, Peninsula Lease Company and others.

At the time of the accident the following policies of automobile liability insurance were in effect: so-called driverless car liability policy issued by Continental Casualty Company (hereafter called Continental) to Paul J. Muldoon, dba Peninsula Lease Co. as named insured; a Massachusetts motor vehicle liability policy issued by Hartford Accident and Indemnity Company (hereafter called Hartford) to Corcoran as named insured; and a schedule automobile liability policy issued by Lumbermens Mutual Casualty Company (hereafter called Lumbermens) to Fenwal as named insured.

Continental appeared and defended the above legal action and eventually settled the Pucci claim for $3,276.15. The parties before us have agreed that such settlement was fair and reasonable. Continental demanded of both Hartford and Lumbermens that they appear for and defend Corcoran and contribute to any judgment or settlement.

Continental thereupon brought the instant action in declaratory relief against Hartford and Lumbermens seeking an adjudication of the liabilities of all three parties. The case was submitted to the court below on an agreed statement of facts, the parties further stipulating that whatever proration was ordered by the court in respect to the above payment of

$3,276.15 to the injured party would be applicable to an outstanding property damage claim of $618.94. The court adopted the agreed statement of facts as its findings of fact and rendered judgment denying all recovery to Continental. From such judgment Continental has taken this appeal on the judgment roll with copies of the policies and the automobile rental agreement as appended exhibits.

Since no extrinsic evidence was introduced in the court below in aid of construction, the construction of the instant policies presents a question of law. We are not bound by the trial court's interpretation of them and we therefore proceed to make our own determination of their meaning from an examination of their applicable provisions. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 430 [296 P.2d 801, 57 A.L.R.2d 914] ; *Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825].)

The Continental policy, under its insuring agreements, provides coverage to the insured for bodily injury liability arising out of defined hazards which include, *inter alia,* " [t]he ownership, maintenance or use of (a) any automobile of the private passenger or commercial type while rented without chauffeurs to others from locations in the United States of America. . . ." It defines the word "insured" to include the named insured and also "any person, firm, association, partnership or corporation to whom an automobile has been rented without a chauffeur. . . ." Continental concedes that its policy extended coverage to Corcoran, the driver, for the accident in question.

Pertinent to the problem at hand is the following provision which is found among the "conditions" of the above policy : "17. Other Insurance. The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise." We observe at this point that the above provision contained in the lessor's policy in the instant case is identical in language with the provision contained in the policy issued by Netherlands Insurance Company to the lessor of the automobile in the *Athey* case. (*Athey* v. *Netherlands Ins. Co., supra,* 200 Cal.App.2d 10.)

The Hartford policy, issued to Corcoran in Massachusetts, provided under its insuring agreements coverage to him for statutory bodily injury liability in accordance with and arising out of the Massachusetts Compulsory Automobile Liabil-

ity Security Act (Coverage A) and in addition coverage for bodily injury liability other than statutory "arising out of the ownership, maintenance or use of the motor vehicle." (Coverage B.) Paragraph V of the insuring agreements provides as follows: "V. Use of Other Motor Vehicles—Coverages B, C and D: If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger motor vehicle covered by this policy, such insurance as is afforded by this policy under coverages B, C and division 2 of coverage D with respect to said motor vehicle applies with respect to any other motor vehicle, subject to the following provisions: (a) With respect to the insurance under coverages B and C the unqualified word 'insured' includes (1) such named insured and spouse; and (2) any other person or organization legally responsible for the use by such named insured or spouse of a motor vehicle not owned or hired by such other person or organization."

Important to the issues before us is the following "other insurance" clause included among the conditions of the policy: "11. Other Insurance—Coverages A, B and C: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, *the insurance with respect to temporary substitute motor vehicles under Insuring Agreement IV or other motor vehicles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance.*" (Italics added.)

 The Lumbermens policy, issued in Massachusetts to Fenwal, Corcoran's employer, under its insuring agreements provides coverage to the insured for bodily injury liability arising out of defined hazards which along with hazards relating to owned automobiles and hired automobiles,[1] included the following provision relating to nonowned automobiles:

---

[1]The policy defined these first two hazards as follows: "Division A. Owned Automobiles—The ownership, maintenance or use, for the purposes stated as applicable thereto in the declarations, of the owned automobile described therein.

"Division B. Hired Automobiles—The maintenance or use, for the purposes stated in the declaration, of any hired automobile. The defini-

"Division C. Non-Owned Automobiles—The use, by any person other than the named insured, of any non-owned automobile of the private passenger type in the business of the named insured as stated in the declarations, and the use in such business, by any employee of the named insured, of any non-owned automobile of the commercial type if such use of such automobile is occasional and infrequent.'' By definition under the insuring agreements the word ''insured'' includes the named insured (Fenwal) and ''also includes . . . under division C of the Definition of Hazards, any executive officer of the named insured.''

However, the declarations and the declarations schedule of the Lumbermens policy make clear that it does not insure for the hazards of owned automobiles or hired automobiles (Divisions A and B of Hazards—see footnote 1) but only for the hazards of nonowned automobiles (Division C—*ante*).

Finally, among its conditions, the policy includes the following ''other insurance'' clause pertinent here: ''13. Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, *the insurance under division B of the Definition of Hazards with respect to a hired automobile insured on a cost of hire basis and under division C of the Definition of Hazards and Insuring Agreement IV (e) shall be excess insurance over any other valid and collectible insurance.*'' (Italics added.)

A comparison of the ''other insurance'' clauses contained in the Hartford and Lumbermens' policies shows that, except for particular paragraph and division references, they are practically the same and that the operative language of each is identical. We also note at this point, that subject to the same exceptions, such clauses are practically the same as the ''other insurance'' clause contained in the policy issued by the National Grange Mutual Liability Fire Insurance Co. to the driver-renter of the automobile in the *Athey* case.[2]

tions in this policy of 'pleasure and business' and 'commercial' apply respectively to private passenger automobiles and to automobiles of the commercial type, except as otherwise provided.''

[2]According to the opinion in the *Athey* case, the National policy provided: '' 'If the insured has other insurance against a loss covered by

It is the position of Continental here that the coverage provided by all of the policies is excess coverage and should therefore be prorated. It is Hartford's position that the coverage afforded by the Continental policy is the primary coverage and that although the Hartford policy extended "incidental coverage" to Corcoran in respect to the accident in question, such coverage was "excess." It is Lumbermens' position that in the first place, its policy did not extend coverage to the Pucci accident since the automobile rented by Corcoran from Muldoon was a "hired automobile" which, as we have pointed out, is a hazard not insured against, and, secondly, that if the policy does cover the accident, such coverage was excess, Continental's coverage to its named insured (Muldoon) and additional insured (Corcoran and Fenwal) being primary.

We consider first the effect of the three "other insurance" clauses. We will then take up Lumbermens' additional contention that its policy does not cover the accident in any event.

*All three policies provide excess insurance.*

On the first issue we are presented with the same question as that presented to this court in *Athey* v. *Netherlands Ins. Co., supra,* 200 Cal.App.2d 10.[3] In that case, the plaintiff Athey rented an automobile from the Hertz Co. and thereafter became involved in a collision. There, as here, the injured party commenced an action against both the driver-renter (Athey) and the owner-lessor (Hertz). There, as here, the policy furnished the driver provided primary insurance for loss arising out of his operation of his own automobile, provided that if he had other insurance while operating his own car, the liability of the carrier under the policy should be prorated, but that if he were driving a nonowned automobile, the driver's policy would be excess insurance over other valid and collectible insurance. We have already pointed out that the "other insurance" clause in the driver's policy in

Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or nonowned automobile shall be excess insurance over any other valid and collectible insurance.'* (Emphasis added.) '' (*Athey* v. *Netherlands Ins. Co., supra,* 200 Cal.App.2d 10, 11.)

[3] Our opinion in *Athey* was filed on February 6, 1962, and after the entry of the instant judgment on July 5, 1961.

*Athey* is practically the same as that contained in the policy of the driver (Corcoran) and his employer (Fenwal) in the instant case. (See footnote 2—*ante*.) ▮▮▮▮ In the *Athey* case, as here, the policy issued to the owner-lessor provided primary insurance coverage for the use of the owner's automobiles by the owner, his employees or any permissive user, provided no coverage in respect to nonowned automobiles and provided further that in the event of any other valid and collectible insurance, all coverage under the policy no matter who the driver was, would be excess insurance. Under such circumstances, as we stated in *Athey* ''there no longer was any primary coverage.'' (200 Cal.App.2d 12.) We have also pointed out that the above clause in the owner-lessor's policy in *Athey* is identical with that in the policy of the owner-lessor here (Muldoon). All crucial clauses are the same in each case, the only difference being that *Athey* involved two policies while the instant case involves three.

We held in *Athey* that each policy was ''other insurance'' as to the other, providing excess coverage only and, in order to protect the insured, that the loss be apportioned between the policies. Mr. Justice Bray wrote: ''In a situation like this, where both policies provide excess coverage only, there is no justification for choosing one as providing 'other insurance' and the other as not so providing'' (200 Cal.App.2d 13), analyzing and distinguishing a number of cases some of which are again cited by respondents herein.

We are therefore not persuaded by Hartford's argument that the present problem should be governed by *American Automobile Ins. Co.* v. *Republic Indemnity Co.* (1959) 52 Cal. 2d 507 [341 P.2d 675]. That case was analyzed and distinguished in *Athey* and our observations in that respect need not be restated here. (See *Athey* case, *supra*, 200 Cal.App.2d pp. 13-14.) It is sufficient to note that in the *American Automobile* case, the accident occurred while the driver was operating a borrowed car. The ''other insurance'' clauses contained in the policies of both the driver and the owner were substantially the same, providing for a prorating where other insurance covered the loss and also providing that, in respect to the operation of a nonowned car by the named insured, the insurance would be excess over all other insurance. Under such circumstances, *American Automobile* gave effect to the excess clause in the driver's policy and refused to give effect to

the pro rata clause in the owner's policy, holding that the owner should bear the entire loss. The conflict in that case was between an excess clause and a pro rata clause. In the case at bench, as in *Athey*, the conflict is between two excess clauses.

Hartford also relies heavily upon *Citizens Mutual Auto. Ins. Co.* v. *Liberty Mutual Ins. Co.* (6th Cir. 1959) 273 F.2d 189. However this case presents the same situation as in *American Automobile* with the policies of both the driver and the owner providing in almost identical language for pro rata coverage as to owned automobiles and excess insurance as to non-owned automobiles. Such case therefore falls into the same category as *American Automobile* and indeed cites and relies upon the latter case. As in *American Automobile,* the conflict was between an excess clause in the driver's policy and a pro rata clause in the owner's policy with the former clause only being given effect. The case therefore is distinguishable from both *Athey* and the case at bench.

Nevertheless Hartford has attempted to construct upon it the following critique of our decision in *Athey*. In the latter case we cited, *inter alia, Continental Casualty Co.* v. *New Amsterdam Casualty Co.* (Ill. App. 1960) 21 Automobile Cases (2d) 1343, which also involved a driverless car liability policy, presented the same question as in the *Athey* case and resulted in a proration of liability. *Continental* in turn cited *Oregon Auto. Ins. Co.* v. *United States Fidelity & Guar. Co.* (9th Cir. 1952) 195 F.2d 958, referring to such case as the leading case on the subject. Hartford here directs no attack at the *Continental* case and apparently ignores its factual similarity noted above. Instead Hartford points out that in the *Citizens Mutual* case, upon which Hartford relies, *Oregon Auto* is characterized as a case representing a minority view. The gist of Hartford's criticism then seems to be that we in effect rested our decision in the *Athey* case on the lesser authority of *Oregon Auto* to the exclusion of such cases as *American Automobile*. This attack on the *Athey* case is completely ineffective.

*Oregon Auto,* like *American Automobile* and *Citizens Mutual,* arose from a collision involving a driver of a borrowed car. The driver's policy contained an "other insurance" clause similar to those in the last two cases, that is a pro rata clause as to owned automobiles and an excess clause as to non-owned automobiles. The owner's policy, however, contained

a pro rata clause as to owned automobiles but a so-called "escape clause" to the effect that a person other than the named insured having other insurance would not be indemnified under the policy. The court concluded that the two clauses were mutually repugnant, that if literally applied neither insurer would be liable and that the conflicting provisions should be disregarded and the liability prorated. Admittedly this rationale of proration was applied at least in part by the *Continental* case in resolving the problem of two excess clauses. Nevertheless basic distinctions remain: The clauses in *Oregon Auto* were not the same as in *American Automobile* as the Supreme Court observes in the latter case (see *American Automobile Ins. Co.* v. *Republic Indemnity Co., supra,* 52 Cal.2d 507, 512, fn.5) or as in *Citizens Mutual,* as we have pointed out above. Nor are the clauses in any of the foregoing three cases the same as those in *Athey* where two excess clauses were involved. Thus, when we dealt in *Athey* with two excess clauses, we did not of necessity ignore the rule of *American Automobile* in respect to the conflicting excess and pro rata clauses there appearing or wholly espouse the technique of *Oregon Auto* in respect to the conflicting excess and escape clauses involved in that case.[4] In our view, *Athey* rests upon the sound analysis of its own clauses. ▉ The inherent nature of the problem of "other insurance" requires a case by case treatment. (See 13 Hastings L.J. 183, 191.) As we said in *American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543, 544 [19 Cal.Rptr. 558], "each case apparently presents a particularistic and unique problem." Valid reasons exist in the instant case to apply the solution of proration. (See generally 69 A.L.R.2d 1122.)

Both respondents have directed our attention to several recent cases allegedly supporting their position but, with apparent reluctance to enter this wilderness of single instances, have refrained from furnishing us with any analysis of the policy provisions involved or comparison of them with those

---

[4]One legal writer explains the solution employed in *Oregon Auto* and cases following it as emerging from a "disenchantment" with the technique of matching or pairing the clauses, i.e. requiring proration where either two pro rata clauses or two excess clauses are opposed. The author also comments upon the reluctance of some courts to emulate *Oregon Auto* in the disregarding of conflicting clauses and, as in *American Automobile* "to continue fixing responsibility on one insurer or the other." (*The Double Insurance Problem—A Proposal,* 13 Hastings L.J. 183.)

in the case before us. Our views on two of these cases[5] were given in *Athey* and need not be reiterated here. In *Fireman's Fund Indemnity Co.* v. *Prudential Assurance Co.* (1961) 192 Cal.App.2d 492 [13 Cal.Rptr. 629], decided by this court, not only were the clauses dissimilar to those here but, in addition, the owner's policy did not contain an effective excess insurance clause. *McConnell* v. *Underwriters at Lloyds* (1961) 56 Cal.2d 637 [16 Cal.Rptr. 362, 365 P.2d 418] is not in point and did not involve conflicting excess clauses. In *McConnell* three policies were issued to the same insured; two of them covered the accident and contained effective pro rata clauses; the third policy provided excess insurance which did not become operative until the limits of the first two policies had been exhausted. Finally, Lumbermens claims that the problem presented in the instant case is different from that presented in *Athey* because in that case "the primary insurance was inadequate to absorb the loss and it was necessary to resort to excess insurance. . . ." Such was not our holding in *Athey* as we think our opinion there makes plain. We held there, irrespective of the adequacy of the policy limits involved, that both policies provided excess coverage.

We therefore hold that the instant case is controlled by our opinion in *Athey* and that the loss here involved must be apportioned among the three insurers herein.

*Lumbermens policy covers the accident.*

As we have pointed out and as Continental concedes, the Lumbermens policy provides coverage for the hazards of "non-owned automobiles" only. It does not provide coverage for the hazard of "hired automobiles." (See footnote 1, *ante.*) But it is clear that, within the coverage provided, Corcoran was an insured since he was an executive officer of the named insured Fenwal.

However, Lumbermens contends that the automobile which Corcoran rented falls within the definition of "hired automobile" in the policy and therefore the policy did not cover the Pucci accident. Paragraph IV of the insuring agreements upon which any such claim must rest provides as follows: "(a) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or

---

[5]Specifically: *Truck Ins. Exchange* v. *Torres* (1961) 193 Cal.App.2d 483 [14 Cal.Rptr. 408]; *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455]; see *Athey* v. *Netherlands Ins. Co., supra,* 200 Cal.App.2d 10, 14-15.

trailer as follows: (1) Owned Automobile—an automobile owned by the named insured; (2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or a partner therein or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile; (3) Non-Owned Automobile—any other automobile.''

For Lumbermens to prevail in the above contention, it must therefore appear that the automobile involved in the Pucci accident was either ''used under contract in behalf of'' the named insured Fenwal or ''loaned to'' Fenwal. It is clear under the agreed facts that the car was not loaned to Fenwal. Was it then used under contract in behalf of Fenwal? We think not.

■ The following principles were announced in *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914] as governing the construction of insurance policies: ''[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] ■ If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured.''

■ The agreed statement of facts which was adopted by the court below as its findings discloses that ''James R. Corcoran, Jr. rented from one Paul J. Muldoon, dba Peninsula Lease Company, a certain Lincoln Automobile.'' Although the parties stipulate therein that at the time of the accident Corcoran was acting within the scope of his employment, there is no agreed statement that the rental contract itself was ''in behalf of'' Fenwal. On the contrary, the contract which is before us is consistent with the agreed statement and finding that Corcoran rented the car. On the first page of the contract in the space designated ''Renter,'' the name James R. Corcoran, Jr. is printed. Following spaces are

completed to give his home address, firm name and address of firm. The contract is signed J. R. Corcoran, Jr. and spaces immediately under such signature are completed so as to indicate that the rental is to be charged and the invoice mailed to Mr. Corcoran at his home address. In an adjoining space designated ''charge authorization'' appear Corcoran's name, business address and presumably a charge plate number.

Thus it appears that Corcoran rented the automobile involved in his own name. There is no basis in the facts that when he did so he was acting for or with the consent of Fenwal. (Cf. *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].) It would be consistent with the facts here stipulated to that Corcoran was to obtain transportation on his own account and personal responsibility and that his employer would not be responsible therefor, even though it might subsequently reimburse the employee for travel expenses. Lumbermens has referred us to no authorities holding that an automobile rented by the employee in his own name is a ''hired automobile'' as that term is defined in the policy under examination. In the light of the applicable principles of construction stated above and under the above facts found by the trial court, we therefore conclude that the automobile in question was not a hired automobile but a nonowned automobile, the use of which was a hazard insured by the policy.

The judgment is reversed and the cause is remanded with directions to the trial court to amend its conclusions of law and to enter a judgment declaring the relative and respective rights and obligations of the parties to this action in accordance with the views herein expressed. Each party shall bear its own costs on appeal.

Bray, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied March 12, 1963, and respondents' petition for a hearing by the Supreme Court was denied April 17, 1963.