[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff applies to vacate an arbitration award.
FACTS CT Page 6613
On October 24, 1986, David Blackburn (Blackburn) was a passenger in an automobile owned and operated by Roy J. Haggan (Haggan) when it collided head-on with a vehicle owned by Antonio Loukas and operated by Constantino Loukas. Blackburn died as a result of the collision.
The sole tort-feasor, Constantino Loukas, was insured under an automobile liability policy issued by Nationwide Insurance Company (Nationwide). Said policy contained a $300,000.00 limit of liability and Nationwide has paid to Gail Blackburn, Administratrix, $88,500.00 thereunder. The remainder of said policy limits has been paid to other claimants and has thereby been exhausted.
At the time of the accident, the Haggan car was insured under an automobile liability policy issued by The Travelers. under the terms of the policy issued by Travelers, Blackburn was an insured and as such, Blackburn was entitled to collect up to $50,000.00 under the uninsured/underinsured coverage (UM) of that Travelers' policy.
At the time of the accident, Blackburn was also an insured under a policy issued by defendant Continental. There were two automobiles in his household that each had $300,000.00 of UM coverage under that Continental policy.
The parties agreed to submit the issues of coverage and damages to arbitration, pursuant to the terms of the Travelers' policy and the Continental policy under C.G.S. 38-175c.
Before the arbitration hearing, the parties stipulated that the total UM coverage available to Gail Blackburn, Administratrix, was $650,000.00, of which $50,000.00 was available under the Travelers' policy abd $600,000.00 was available under the Continental policy. It was also stipulated that the Administratrix had received $88,500.00 from Nationwide under the tort-feasor's policy.
Before the arbitration hearing, Continental paid $511,500.00 to the Administratrix, (the amount Continental would have to pay if the arbitrators granted it a full credit for the $88,500.00, i.e., $600,000-$80,500); Travelers made no payment to the Administratrix. The amount Travelers would have to pay if the arbitrators granted it a full credit for the $88,500.00 is zero ($50,000-$88,500).
The "other insurance" clause in the Travelers' policy reads as follows: CT Page 6614
Other Insurance
 An insured who is covered by other similar insurance may collect no more than the highest applicable limit of any one policy. Our share of the damages will be in proportion to our share of the total of the limits of all applicable policies.
 If, however, the insured suffers bodily injury while occupying a car you do not own to which similar insurance applies, this coverage applies as excess insurance and then only in the amount by which it exceeds the applicable limits of liability of the other insurance.
The Continental policy's "other insurance" clause reads as follows:
 If there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be in excess over any other collectible insurance.
The sole issue the parties submitted to the arbitrators concerned the appropriate allocation of the $88,500.00 credit between Travelers and Continental to determine the portions of the remaining UM coverage that Travelers and Continental were each obligated to pay to the Administratrix. But the real issue was which policy was "primary."
Two of the arbitrators held that of the $88,500.00, Travelers was entitled to a credit of $6,807.70 and that Continental was entitled to a credit of $81,692.30; the two arbitrators therefore concluded that of the remaining $50,000.00 of available underinsured coverage, Travelers was obligated to pay David's estate $43,192.30 and that Continental was obligated to pay $6,807.70. The third arbitrator dissented.
The arbitrators agreed that as to the insured Blackburn the car he was in was a car he did not own.
LAW
I. De Novo Review CT Page 6615
Where judicial review of compulsory arbitration proceedings required by C.G.S. 38-175c(a)(1) is undertaken under C.G.S. 52-418 this court must conduct a de novo review of the interpretation and application of the law by the arbitrators. American Universal Ins. Co. v. Del Greco,205 Conn. 178, 191.
II. Interpretation of Coverage of both Policies
All three arbitrators found that the "other insurance" clauses in both policies were "excess" clauses.
In a conflict like this where each party seeks to make its policy excess the best solution is to prorate the loss. Continental Ins. Co. v. Aetna Cas. and Sur. Co., 823 F.2d 708,711 (2nd Cir. 198).
This court does not believe that all of the language in the cases striking down "other insurance" clauses in UM coverage situations, e.g., Pecker v. Aetna Casualty Surety Co., 171 Conn. 443, is applicable to a contest, such as our present case, which is solely between the insurers. Cf. Eggleston v. Townsend, 326 F. Sup. 1212, 1218. It is now beyond question that such clauses are void as to the insured. Safeco Ins. Co. v. Ventre, 174 Conn. 329. They are not void as between the insurers.
An excess clause is one which provides that if there is other collectible insurance covering the loss the policy of the company which wrote the clause is applicable if the total loss exceeds the limits of the primary policy. 8A Appleman, Insurance Law and Practice 4906, 4908, 4909 and 4910.
Both of our clauses are "excess." Thus the question is, which is primary? Because they are in total conflict the best solution is to treat both as primary and prorate the loss. Atlantic Mutual Ins. Co. v. Trust Ins. Exchange, 797 F.2d 1288,1294-9 5th Cir. (1986). Continental Can Co. v. Hartford Acc. 
Indem. Co., 28 Cal.Rptr. 606, 609-612, 213 Cal.App.2d 78, (1963). In St. Paul Mercury Ins. Co. v. Underwriters at Lloyds of London, 365 F.2d 659 it was said,
 "The contracts do contain language contemplating, in the abstract, the existence of other insurance. Each company attempted to accomplish essentially the same thing in such an eventuality, although different wording was used. Each sought to place itself in line after primary insurance had been exhausted, and so to protect the insured should such an eventuality come about. This is sufficient. CT Page 6616 It demonstrates that each had a sufficiently similar obligation to the insured that both should discharge it. This general purpose is disclosed by the policies, and is within the general intention of the parties . . . .
 St. Paul by its "other insurance" clause did not place itself after Lloyds as it urges, nor did Lloyds make St. Paul primary insurance by the wording it used. Both companies undertook to provide excess coverage, and both were on an equal basis once the primary coverage was exhausted. There is no reason to distinguish between them."
The application to vacate the award is denied.
O'NEILL, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 6619