490 So.2d 354 (1986)
Norton J. DUPAQUIER
v.
Sam BARBERA, d/b/a Barbera Motors.
No. 85 CA 0180.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied July 15, 1986.
*355 Charles A. Kronlage, Jr., New Orleans, for plaintiff.
J. Louis Gibbens, Gibbens & Blackwell, New Iberia, for defendant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Norton J. Dupaquier (plaintiff) brought suit for worker's compensation benefits against Sam Barbera (Barbera) d/b/a Barbera Motors.[1] On December 23, 1982, plaintiff received a very severe head injury when he was involved in a one-car accident in Terrebonne Parish while returning to Barbera's automotive dealership in Morgan City where he was employed as sales manager. After trial on the merits, plaintiff's suit was dismissed. The trial court found that plaintiff was not within the course and scope of his employment at the time of the accident. Plaintiff brings this devolutive appeal.
Part of plaintiff's compensation package included the use of a demonstrator. Barbera testified that plaintiff's salary was $1,200.00 per month plus commissions; that his hours generally were from 8:00 a.m. to 6:00 p.m. but that plaintiff was a workaholic; that he paid for the gas and incidentals for the demonstrator; that one of the main purposes for furnishing demonstrators to his salesmen was that the vehicles became rolling advertisements; that salesmen like plaintiff were expected to push sales of demonstrators wherever and whenever possible, not limited to their hours of employment; that plaintiff used the demonstrator to get to and from work and also for personal matters, but that generally demonstrators were not used for out-of-town personal business.
On the day of the accident, plaintiff went to work, then got permission from Barbera to attend the funeral of a relative in Chauvin. He was returning to the dealership from this funeral when the accident occurred.
Barbera testified that plaintiff asked for and got his permission to attend the funeral; that he did not deduct any time from plaintiff's pay while he was away from the showroom; that plaintiff was to return to work after the funeral and resume his duties; that he did not ask plaintiff to do anything for him while he was in Chauvin.
Plaintiff testified that he had no recollection of the accident or what transpired that morning with Barbera before he left for the funeral; that he could recall the funeral and remembered talking to Danny Lirette and his son, Danny, Jr., both of whom indicated interest in his demonstrator, a Jimmy (mini-Blazer) truck; that he did not get specific as to price or attempt to negotiate because he was at a funeral, but he hoped that their discussions might lead to a sale.
Danny Lirette, Sr.'s, deposition was introduced as a joint exhibit in lieu of his live testimony. Lirette testified that he had seen plaintiff at the funeral home; that he and plaintiff were in a group while he was discussing the fact that he was looking for a truck for his son to use in the shrimping business; that plaintiff mentioned he was in a truck and asked if he and his son wanted to see it; that they walked out to the parking lot and looked at it; that they did not discuss price, other than plaintiff quoting the sticker price and saying that they could talk about it later.
Danny Lirette, Jr., also testified by deposition introduced as a joint exhibit. His testimony generally tracked that of his father. He corroborated the fact that his father was talking to someone about buying *356 a truck to go into the shrimping business; that when plaintiff heard the conversation and said he had a truck out on the lot that they might be interested in, everyone walked outside and looked at the mini-Blazer; that they saw the sticker price and went back inside; that he did not discuss the price but his father did.
The trial court, in applying the law to the aforesaid facts, concluded that plaintiff had not established that his situation was an exception to the general rule that an employee is not within the course and scope of his employment if an accident occurs while he is traveling to or returning from his place of employment. The trial court acknowledged said general rule was subject to a number of jurisprudential exceptions. The exception which concerns us is that an accident that happens while an employee is being transported to or from work by his employer is compensable under the Worker's Compensation Act if the transportation is furnished as an incident of the employment. Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App.3rd Cir.1970), writ refused, 256 La. 894, 240 So.2d 231 (1970). This exception generally applies when the employer has interested himself in the transportation to and from work as an incident of the employment agreement. In Boutte, plaintiff, an employee subject to call 24 hours a day, was injured on a Sunday when he was driving home after picking up the employer's truck from the shop so he would be ready for Monday morning. The Boutte court, in awarding compensation, stressed that plaintiff was on call 24 hours a day and was returning home in his employer's vehicle so he would be ready to respond to calls at any hour of the day or night, and it had to be reasonably contemplated as employment that he would be driving a truck home to have it available. The trial court here distinguished Boutte on the grounds that plaintiff was not on 24-hour call and that the trip to Chauvin to attend a funeral was not contemplated by plaintiff's employment.
We find that the learned trial judge has taken too restrictive an interpretation of this exception. Landry v. Benson and Gold Chevrolet, 398 So.2d 1262 (La.App. 4th Cir.1981). In Landry, a used car salesman furnished with a demonstrator realized he had forgotten business papers at home, turned around to get them, and was involved in an accident. The court found that the accident occurred within the course and scope of employment.
The facts here show that plaintiff was furnished the use of a demonstrator for business and personal use; that all gasoline and incidental expenses were paid by Barbera; that the vehicle had an identification label indicating that it was from Barbera Motors; that plaintiff was under an obligation to sell vehicles including this demonstrator at all times; that one of the reasons for furnishing demonstrators to salesmen was that they provided ideal rolling advertisements of defendant's product; that plaintiff, in keeping with his duties and obligations, and even though he was at a funeral, responded in his employer's best interest when he told the Lirettes he had a truck parked outside and asked if they would like to look at it; that after initiating this interest in his truck, he and the Lirettes went to the parking lot, looked over the truck, and very generally discussed the sticker price but went no further because of their respect for the occasion.
With these facts, we must conclude that plaintiff was within the jurisprudentially created exception to the general rule as articulated in Landry at the time of this accident and that said accident occurred while he was in the course and scope of his employment, thus entitling him to the benefits of the Worker's Compensation Act.
Immediately after the accident, plaintiff was transferred from Terrebonne General Hospital to Southern Baptist Hospital in New Orleans. He was treated by Dr. Michael Carey, a neurosurgeon, because he presented very serious neurological symptoms and in fact was unconscious. Dr. Carey was of the opinion that plaintiff had a closed head injury. A CAT scan showed a small clot on the brain. Dr. Carey described the injury as a very, very *357 serious brain injury. Plaintiff remained unconscious until January 7, 1983, and was hospitalized at Baptist until February 16. He was then transferred to F. Edward Hebert Memorial Rehabilitative Hospital, where he remained until March 23. Since his discharge from Hebert, plaintiff has undergone physical therapy, G.E.D. training, and vocational technical training in Houma. Dr. Carey has followed plaintiff's progress and sees him periodically at his office. He felt that plaintiff had made remarkable improvement, but at the time his deposition was taken thought it was "iffy" as to whether plaintiff could resume any type of gainful employment or occupation in the future. He felt that neurologically plaintiff could function, but neuropsychologically he could not.
Dr. Cornelius Gorman, Director of Vocational Services Clinic in Metairie, tested plaintiff on August 9, 1984. After a battery of tests, he was of the opinion that plaintiff was unable to return to employment and compete at a reasonably stable level. His testing revealed that plaintiff's reactions physically and mentally were too slow for him to be an adequate employee. Dr. Gorman felt that a final prognosis should be withheld for the next 12 or 24 months.
Plaintiff was also referred to Dr. F. William Black, Associate Professor of Neurology and Director of the L.S.U. Neuropsychological Laboratory at the L.S.U. Medical Center. Dr. Black supervised neuropsychological evaluations on August 3, 1983, January 23, 1984, and August 13, 1984. His findings indicated that while plaintiff could function within the average range of intelligence, he demonstrated certain neuropsychological deficits, including mildly impaired memory functions, deficient short-term verbal recall, and depressed motor and psychomotor speed and deficits in sensory and perceptual integration. These findings indicated to Dr. Black that plaintiff had residual brain damage which almost certainly was a result of the closed head injury he sustained.
The medical evidence convinces us that at the present time plaintiff is totally and permanently disabled and entitled to worker's compensation benefits attendant to this disability.
Plaintiff also seeks penalties and attorney fees. We will not award same because clearly there was a rational basis for declining to pay benefits in this case. Barbera and his insurer, Travelers Insurance Company, were certainly entitled to litigate the issue as to whether or not plaintiff was in the course and scope of his employment when he was injured. They were not guilty of any arbitrary and capricious failure to pay in this case.
Accordingly, judgment is rendered in this case in favor of plaintiff and against defendant and his insurer for worker's compensation benefits payable weekly at the maximum rate, together with legal interest thereon from the date that each installment becomes due until paid, said compensation to continue during the period of plaintiff's disability. Plaintiff is also entitled to all unpaid medical expenses and interest thereon. All costs are taxed against defendants, including the expert witness fees of Dr. Cornelius Gorman of $700.00 and Dr. Michael Carey of $200.00.
REVERSED AND RENDERED.
NOTES
[1] By amended petition, Travelers Insurance Company was joined as a party defendant. It was stipulated at trial that Travelers provided worker's compensation insurance for Barbera which covered this claim.