552 So.2d 717 (1989)
John W. HUGHES
v.
GEARHART INDUSTRIES, INC., and CNA Insurance Companies.
No. 88 CA 1369.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
Writ Granted January 26, 1990.
*718 Michael J. Samanie, Samanie, Barnes & Allen, Houma, for plaintiff-appellant John W. Hughes.
Joseph G. Gallagher, Jr., Hulse, Nelson & Wanek, New Orleans, for defendant-appellee Gearhart Industries, Inc. and CNA Ins. Companies.
Before COVINGTON, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
This suit was brought by John W. Hughes (plaintiff) against his employer, Gearhart Industries, Inc. (Gearhart), and CNA Insurance Company (CNA), Gearhart's worker's compensation insurer.
Plaintiff collided with an 18-wheel tractor-trailer rig on Louisiana Highway 1 in Lafourche Parish on the evening of February 1, 1983, after leaving a nearby lounge. Plaintiff's vehicle crossed the center line. Plaintiff was seriously injured and was taken for emergency medical attention, at which time a blood sample was drawn. The sample later tested at a blood alcohol level of .27% alcohol by weight.
Defendants denied worker's compensation disability benefits, asserting that plaintiff was intoxicated and was not in the course and scope of his employment at the time of the accident. The trial court's excellent findings of fact determined that plaintiff was intoxicated, said intoxication being a substantial cause of the accident, and that he was not in the course and scope of his employment. Plaintiff appeals.
Plaintiff has assigned 13 errors in the trial court's judgment, including, inter alia, error in finding plaintiff not within the course and scope of his employment, error in allowing into evidence the results of the blood alcohol test and error in allowing an employer who, according to plaintiff, encourages and expects the consumption of alcohol by its employees as they solicit sales from potential customers, to avail itself of the statutory defense of intoxication. See LSA-R.S. 23:1081(1)(b).
FACTS
Gearhart sells wireline services and tools to oil and gas drillers and producers. Plaintiff testified that although the foremen of drilling rig crews have the authority to purchase such supplies, the crew members often express a preference which results in a sale. The evidence in the record reveals that as a common practice members of rig crews were treated by salesmen as potential customers.
On the day of the accident, plaintiff had arranged to hold a "cookout" at what is called the SLADCO camp on Grand Isle with Howllen Coleman Perritt, a sales representative for SLADCO, for the members of crews from Exxon's West Delta Block production platforms who were coming off the job. These crews are transported from the rigs out on the Gulf of Mexico to Grand Isle, and it is apparently common practice for sales representatives from support industry companies, such as SLADCO and Gearhart, to make contact with crew members at company-owned camps and at lounges on and in the vicinity of Grand Isle, in an effort to solicit business. Carl LeCompte, a former Gearhart salesman and district manager, testified that he was *719 aware of the practice and that Gearhart paid the expenses of this entertaining, including the purchase of alcohol.
On the day before the accident, plaintiff purchased $183.00 worth of food and beer and drove in his company-furnished automobile to the SLADCO camp, where he and Perritt began to prepare the food for the following day. Plaintiff testified that he went to sleep well after midnight and woke up around 5:00 a.m. the following morning; that he began drinking beer around 8:00 a.m.; that the guests began arriving around 10:30 or 11:00 a.m. and stayed until approximately 1:30 or 2:00 a.m.; and that he then assisted Perritt in cleaning until around 5:00 p.m. Perritt testified that he closed the camp that day at 3:00 p.m. and that Hughes had left sometime prior to that.
Sometime that afternoon Hughes left the camp with David Allen Walter (who had attended the cookout) and went to the Balcony Lounge in Leeville. Plaintiff testified he was to meet Gus Washington, an Exxon field foreman, who had been at the cookout earlier that day. Washington never appeared at the Balcony Lounge that evening and was not called to testify at trial. Plaintiff testified that he discussed business with several people at the Balcony but was unable to name any of these persons.[1]
The trial court's reasons for judgment reflect that it was not persuaded that plaintiff's visit to the Balcony Lounge was in the "course and scope" of his employment with Gearhart, primarily because of the protracted period of time that he stayed there. The court stated:
In the case at hand, other than petitioner's testimony that he was to meet Gus Washington, there is no evidence that his stop at the Balcony Lounge at about 5:00 p.m. and his remaining there for about four hours was to advance his employer's business or in the interest of his employer. To merely say that he was to meet someone there or that he might see a prospective customer there is not sufficient to support his presence there for four hours. It is not reasonable to assume that the defendant would expect any salesman to wait four hours for a customer or hang around in a lounge for four hours "scouting" for business. It is proper to consider, through the exercise of common sense, whether the necessities of promoting the business would require petitioner to make such a stop considering the extent of his activities during the preceding twenty four hours. Dupre vs. La. Retailers Ass'n. Self-Insurers, 509 So.2d 608 (La.App. 3rd Cir.1987).
LAW
The Worker's Compensation Law imposes benefits liability upon an employer (subject to certain exceptions) for the personal injuries of its employees "arising out of and in the course of his employment." LSA-R.S. 23:1031. Generally, travel to and from a place of employment is not within the course of employment. Dupaquier v. Barbera, 490 So.2d 354, 356 (La.App. 1st Cir.1986). An exception to this rule is recognized where the employer has furnished transportation as an incident of employment. Id. When the employer has furnished transportation and the trip is employment connected, the employee is in the course of employment. Michaleski v. Western Preferred Casualty Co., 472 So.2d 18, 21 (La.1985). This connexity is established when at the time of the accident the employer had reason to expect that the employee would undertake the mission and the employee had reason to expect to be compensated for it. See Michaleski, 472 So.2d at 21 (citing O'Brien v. Traders and General Insurance Co., 136 So.2d 852, 864 (La.App. 1st Cir.1961)). A minor deviation from the mission will not remove an employee from the course of employment if it is "humanly incidental to his service as an employee and [if it] does not unreasonably increase the risk of injury." *720 Robinson v. F. Strauss & Son, Inc., 481 So.2d 592, 593 (La.1986).
CONCLUSION
Plaintiff's mission on the day of the accident was to hold a cookout at the SLADCO camp for members of the Exxon West Delta Block crews coming off the job. It is not clear whether the trial court accepted plaintiff's testimony that he went to the Balcony Lounge to meet Gus Washington, which, arguably, would have extended his mission. It is clear that the trial court found that the mission was not extended to encompass the several hours plaintiff spent there. This finding is supported by the fact that on the day of the accident, plaintiff was aware that he had been demoted from the salesman position and was to return to the field position that he had held previously. Additionally persuasive is the evidence in the record that plaintiff did not receive commissions on sales, thus removing pecuniary incentive for plaintiff to make any more sales. The record reveals that the cookout had been planned prior to the implementation of layoffs at Gearhart (and plaintiff's resultant demotion) and that plaintiff's superiors allowed him to participate in the cookout only because it had already been planned. We conclude that plaintiff's deviation was not minor and, in light of his continuous consumption of alcohol, unreasonably increased his risk of injury. See Robinson, 481 So.2d at 593. Cf. Dupaquier, 490 So.2d at 355-56; Michaleski, 472 So.2d at 19-21. For these reasons, the trial court was not clearly wrong in determining that plaintiff was not in the course of his employment at the time of the accident. Our holding on this point obviates the need for us to address the remaining assignments of error. We note, however, that our holding should not be deemed to express any opinion on the applicability of the statutory intoxication defense to these facts. Costs of this appeal are taxed to plaintiff.
AFFIRMED.
NOTES
[1] In this regard, David Walters' testimony does not lend plaintiff any support inasmuch as his testimony indicates he recalls nothing significant beyond arriving at the Balcony and was apparently "asleep" at the time of the accident.