PRESTON H. HUFFT, Judge Pro Tern.
Plaintiffs Carolyn B. Bell and her children, Todd G. Bell and Tyson A. Bell, appeal a trial court judgment granting a motion for summary judgment in favor of defendant Insurance Company of North America (INA). We reverse and remand for further proceedings.
*548 The plaintiffs are the surviving wife and children of Robert B. Bell, who was killed in an automobile accident in New Orleans on April 13, 1988. Mr. Bell was employed by Lawrence Livermore National Laboratory (LLNL) at Berkeley, California and was on a work-related business trip at the time of the accident. He and several co-employees had attended a conference in Vicksburg, Mississippi, April 11 through 13. Although most of the employees had flown directly to Jackson, Mississippi, Mr. Bell and Holly Dockery had flown to New Orleans, where Mr. Bell had rented an automobile from National Car Rentals and the two co-workers had driven to Vicksburg. After the conference was over on April 13, Mr. Bell and Ms. Dockery drove back to New Orleans, where they proceeded to look for lodging for the night.
Ms. Dockery was driving the rental car when the accident occurred, at the corner of Chef Menteur Highway and Downman Road. She apparently disregarded a traffic signal when she entered the intersection, and the car was struck on the passenger side by New Orleans Police Officer Henry Gueringer, who was driving a vehicle owned by the City.
At the time of the accident, LLNL was the named insured of a general liability insurance policy issued by INA. The Bell family filed suit against a number of defendants, including INA. They alleged that INA is legally responsible under the liability portion of the policy for the negligence of Dockery and that INA is legally responsible under the uninsured/underinsured motorist portion of the policy for the negligence of Officer Gueringer and the City. INA filed a motion for summary judgment on both claims, which was granted by the trial court. The Bell family has appealed.
Under the provisions of La.C.C.P. art. 966, motions for summary judgment may be granted only when “reasonable minds must conclude” that two elements are present: (1) no genuine issues of material fact exist and (2) mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Transworld Drilling v. Texas General Petroleum Co., 524 So.2d 215, 217 (La.App. 4th Cir.1988).
The Bell family contends that INA is responsible for Dockery’s negligence under one of two provisions of the insurance policy, located in a section captioned “IV. Persons or Entities Insured.” The first of those provisions provides as follows:
Each of the following is an Insured to the extent set forth below:
[[Image here]]
B. While acting within the scope of his employment as such:
1. Any officer, servant or employee of the Named Insured;
The “course and scope” issue has not been definitively decided in the instant case. A previous motion for summary judgment on that question was denied by the trial court; writs on that question were denied by this court. However, INA argues that the resolution of that issue does not affect its liability under the above provision. The provision provides specifically that an employee is covered only “while acting within the scope of his employment as such.” Therefore, if Dockery was not acting within the course and scope of her employment at the time of the accident, she was not covered under the express terms of the policy. If Dockery was acting within the course and scope of her employment, the Bell family’s exclusive remedy against LLNL under Louisiana law would be in worker’s compensation. LSA-R.S. 23:1032. The Bell family argues simply that the motion for summary judgment was inappropriately granted because the course and scope question remains a material question of fact.
The other provision of section IV of the policy relied upon by the Bell family in its argument that INA is responsible under the liability portion of the policy for Dock-ery’s negligence is subsection D, which provides, in pertinent part, as follows:
Each of the following is an Insured to the extent set forth below:
[[Image here]]
D. Any person or entity using an owned automobile or a hired automobile and any *549 person or entity legally responsible for the use thereof, provided the actual use of the automobile is by or with the permission of the Named Insured.
The insurance with respect to any person or entity other than the Named Insured does not apply under Division D. of this insuring agreement:
[[Image here]]
2. With respect to any hired automobile, to the owner, or a lessee thereof other than the Named Insured, or to any agent or employee of such owner or lessee.
Part VII(I)(2) defines “hired automobile” as follows:
[A]n automobile used under contract in behalf of, or loaned to, the Named Insured provided such automobile is not owned by or registered in the name of (A) the Named Insured or (B) an officer, servant or employee of the Named Insured who is granted an operating allowance of any sort for the use of such automobile[.]
INA argues that LLNL did not lease the auto, so it could not be considered to be “under contract in behalf of, or loaned to, the Named Insured.” The essence of the argument is that only automobiles leased by LLNL would be covered by the provision. Since Mr. Bell himself leased the automobile, INA argues, the policy provision does not apply. The Bell family counters this contention with several arguments, based on general principles regarding interpretation of insurance contracts. The essence of the Bell family’s argument is that employees are always covered under the above provision, so long as they are driving with LLNL’s permission. The Bell family argues that the facts indicate that Dockery was driving with LLNL’s implied permission.
After considering the language of the pertinent policy provisions, we find that material issues of genuine fact exist, making the granting of the motion for summary judgment inappropriate. It is uncontested that LLNL gave both Mr. Bell and Ms. Dockery permission to fly to New Orleans, rather than to Jackson. Additionally, Mr. Bell’s travel itinerary indicates that he was instructed to rent a car from National to drive from New Orleans to Jackson; Ms. Dockery’s itinerary indicates that she was instructed to share Bell’s rented automobile. Although the company’s travel policies indicate that all drivers of rented automobiles “should” sign the rental agreement, that language is not mandatory.
On appeal, INA attached to its brief a copy of automobile rental agreement number V 661575 3 between Mr. Bell and National. Although the contract is difficult to read in its entirety, it is apparent that the rental price for that agreement was charged to a credit card which was imprinted as follows:
ROBERT B BELL
LLNL LIVERMORE USDOE
Also attached is a credit card receipt imprinted in the same manner.
Apparently, INA’s purpose in attaching those documents was to prove that Mr. Bell personally rented the automobile in question. In a reply brief, the Bell family objects to INA’s submission of the documents, claiming that the agreement involved an automobile rented for travel from Mr. Bell’s home to the airport in San Francisco prior to his flight to New Orleans. Since the agreement is illegible, it is unclear whether it relates to the automobile in question. However, we feel that we can reasonably rely on the assumption, argued by INA, that the credit card used was the same one used to rent the automobile in New Orleans.
On the basis of that assumption, and by reference to the other facts in the record detailed above, we find a genuine issue of material fact concerning whether LLNL was the lessor of the automobile in question. It is textbook law that a business entity, being inanimate, cannot act for itself, and thus must act through authorized agents. Certainly the evidence indicates that LLNL had control over Mr. Bell and Ms. Dockery’s plans, even to the extent that it chose the rental car company they used. The imprint of the credit card indicates that it was a company-issued card. *550 The parties agree that LLNL paid for the rental automobile. Thus, the evidence raises a genuine issue of material fact concerning whether LLNL itself leased the automobile for Mr. Bell and Ms. Dockery’s use.
INA’s entire argument on this issue is based on its contention that the hired automobile coverage provision applies only if LLNL was itself the lessee of the automobile. Since we find a genuine issue of material fact on this pivotal question, it is unnecessary for us to consider whether the Bell family’s interpretation of the policy or INA’s interpretation of the policy is correct. The motion for summary judgment on the liability issue is therefore reversed.
On the UM portion of the policy, INA contends that it has no liability because it executed a rejection of UM coverage (“Endorsement No. 3”). The Bell family attempts to attack the validity of the rejection on the basis of several arguments involving the requirements of a valid rejection under Louisiana law and on the basis of material changes in the policy between the time it was originally written in 1983 and the time of the accident in 1988.
Under Louisiana law, automobile liability insurance policies covering accidents which both occur in this State and involve residents of this State must contain UM coverage in the amount of the liability coverage, unless the insured party rejects UM coverage in writing or selects lower limits. LSA-R.S. 22:1406(D)(1)(a). However, the new rejection is not necessary for a- “renewal, reinstatement, or substitute policy” provided a valid rejection was effected in a previous policy. Id.
Endorsement No. 3, attached to the INA policy in this case, purports to reject UM coverage. However, the endorsement is not dated. INA maintains that it has been in effect since the policy was originally issued for the period beginning October 1, 1983. Assuming that to be true, the question becomes whether the policy in effect at the time of the accident was a “renewal, reinstatement, or substitute policy” for the policy issued in 1983.
Pertinent to this inquiry are Endorsements No. 22 through 24, which became effective on October 1, 1987. The purpose of the three endorsements was to “amend and replace” the policy’s definition of “named insured” from the following:
The Regents of The University of California DBA: Lawrence Livermore National Laboratory, and Lawrence Berkeley Laboratory. But only with respect to operations conducted under D.O.E. contracts #W-7405-ENG-48 and DE-AC03-76SF00098
to the following:
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
DBA: LAWRENCE LIVERMORE NATIONAL LABORATORY
LAWRENCE BERKELEY LABORATORY
LOS ALAMOS NATIONAL LABORATORY
BUT ONLY WITH RESPECT TO OPERATIONS CONDUCTED
UNDER D.O.E. CONTRACTS: W-7405ENG-48
DE-AC03-76SF00098
W-7405-EN G-36
Thus, the endorsements added an additional insured laboratory and a third DOE contract. Additionally, Endorsement No. 19, effective October 1, 1986, added an additional premium of $500,000.
The Bell family contends that the combined effect of the above endorsements, which became effective after INA says the UM rejection was signed, created a new insurance policy, making renewal impossible. Although there is insufficient evidence in the record for us to make that determination, we agree with the plaintiffs that this is an unresolved genuine issue of material fact. Since INA’s major defense on this issue is the rejection, which is valid for this accident only if the policy is a renewal, analysis of the other issues raised by the Bell family is unnecessary.
For the above and foregoing reasons, the trial court judgment granting INA’s motion for summary judgment is reversed. The *551 case is remanded for further proceedings consistent with this decision.
REVERSED AND REMANDED.