645 So.2d 1177 (1994)
James A. VAUGHAN, Plaintiff/Appellant,
v.
Tom HAIR, Automotive Casualty Insurance Company, and State Farm Mutual Automobile Insurance Company, Defendants, and
Chemical Control, Inc., Boston Old Colony Insurance Company and Certain Underwriters at Lloyds' London, Defendants/Appellees.
No. 94-86.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
Rehearing Denied December 14, 1994.
*1179 John Allen Jeansonne Jr., Michael J. Remondet Jr., Lafayette, for James A. Vaughan.
David Michael Kaufman, Lafayette, for Tom Hair et al.
St. Paul Bourgeois IV, Emile Joseph Jr., Lafayette, for Chemical Control, Inc.
James Buckner Doyle, Lake Charles, for Boston Old Colony Ins. Co.
David Michael Kaufman, Lafayette, for Automotive Cas. Ins. Co.
Jon Wesley Wise, Winston Edward Rice, New Orleans, for Orian Ins. Co., et al.
Before YELVERTON, THIBODEAUX, and COOKS, Judges.
YELVERTON, Judge.
This suit arises out of a rear-end collision allegedly caused by the negligence of an intoxicated following driver. The lead driver, James Vaughan, initially sued the following driver, Tom Hair, Hair's automobile liability insurer and his own uninsured motorist carrier. In subsequent amending petitions, Vaughan also named as defendants Hair's employer, Chemical Control, Inc., Chemical Control's automobile insurer, Boston Old Colony Insurance Co., and its general liability insurer, Certain Underwriters at Lloyd's London. Vaughan appeals summary judgments rendered in favor of Chemical Control and its two insurers.
The summary judgments involve the liability of Chemical Control under two theories, respondeat superior and its independent negligence.

FACTS
Tom Hair was employed as a chemical mixer and driver for Chemical Control. He testified that on the night of the accident, September 25, 1990, he was "finishing up" his job duties between 9:00 and 9:30 p.m. when his supervisor, Jeff Meche, left to buy some beer. He testified that when Meche returned, he had completed his work, and the two of them remained on the premises, consuming approximately one 12-pack of beer. The accident occurred at approximately 11:30 p.m. that evening, while Hair was returning to his home in his personal vehicle from Chemical Control's offices.
Both Hair and Meche testified that employees of Chemical Control were allowed to drink alcohol on the premises when their work was completed. However, employees were not allowed to drink if they were scheduled to make deliveries. The company usually provided its employees with soft drinks, not beer, although the owner, Tony Primeaux, may have bought some beer on occasion.
Although Hair's job duties included making deliveries, he stated that he only used company vehicles for these activities. He used his personal vehicle only for travel to and from work. He did not use his personal vehicle to run business errands, and he had never driven his own car to any other job location. This testimony was corroborated by Tony Primeaux, who stated that his employees did not use their personal vehicles for business purposes.
Hair was paid a salary; he did not receive a travel allowance or other compensation for the use of his vehicle. Like the other company employees, Hair carried a beeper, but neither Meche nor Primeaux could remember a single time when an employee was called back after leaving at the end of a work day. Meche testified that if an employee was ever called, he could refuse to work if he were "beeped" after hours. Primeaux testified that the purpose and use of the beepers *1180 was to contact employees when he had to be away from the office or to contact drivers who might be on the road.
Ruling on motions for summary judgment filed by Chemical Control, Boston Old Colony and Certain Underwriters at Lloyd's London, the trial court determined (1) that Hair was outside the course and scope of his employment with Chemical Control at the time of the accident, and the employer was therefore not liable under the doctrine of respondeat superior; and (2) that Chemical Control was not independently liable to the plaintiff for its own negligence, under the facts presented, for furnishing liquor or allowing its employees to drink prior to their leaving the work premises.

REVIEW
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same question as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment is a matter of law. Smith v. Our Lady of the Lake Hospital, Inc., 93-C-2512 (La. 7/5/94), 639 So.2d 730.
Reviewing the record with this question in mind, we can find no disputed material fact that would permit the plaintiff to recover damages from Chemical Control and its two insurers.

COURSE AND SCOPE OF EMPLOYMENT
Every case must be judged under its own set of facts to determine if an employee is acting within the course and scope of his employment. Hebert v. Witherington, 520 So.2d 1075 (La.App. 3d Cir.1987), writ denied, 522 So.2d 566 (La.1988). The specific inquiry is whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment-duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." LeBrane v. Lewis, 292 So.2d 216 (La.1974).
The general rule is that an employee, in going to and from work, is not considered as acting within the course and scope of his employment to such an extent as to render his employer liable to third persons for the employee's negligent acts. Gordon v. Commercial Union Ins. Co., 503 So.2d 190 (La.App. 4th Cir.), writ denied, 506 So.2d 1227 (La.1987).
The jurisprudence has outlined three exceptions to the above rule. An accident may be held to be within the course and scope of the employee's employment if (1) the employer provides the transportation the employee uses to go to and from work; (2) the employer provides expenses or wages for the time spent traveling in the vehicle; or (3) if the operation of the motor vehicle is incidental to or is actually the performance of some employment responsibility. See Castille v. All American Insurance Company, 550 So.2d 334 (La.App. 3d Cir.1989), writ denied, 556 So.2d 1261 (La.1990); Castille v. Sibille, 342 So.2d 279 (La.App. 3d Cir.1977).
Undisputedly, the first two exceptions do not apply in the instant case. Chemical Control did not provide Hair with transportation to or from work, and Hair was not compensated for use of his personal vehicle. However, plaintiff makes two arguments that Hair's use of his personal vehicle on the night in question was incidental to his employment responsibility. First, plaintiff contends that Hair was still under his employer's control at the time of the accident because he was wearing a beeper. Second, he argues that Chemical Control derived some benefit from Hair's driving home that evening because Hair's ability to drive was essential to his job responsibilities.
We find neither argument persuasive. From the testimony of Meche and Primeaux regarding Chemical Control's use of the beepers, it is clear that the company employees were not on 24-hour call. Neither Meche nor Primeaux could remember a single incident when an employee was called back to work after he had left. They also stated that once an employee left at the end of a work day, there would be no reason for him to return. We also do not agree that *1181 Hair was serving his employer's interest solely because he was operating a vehicle. Although Hair was employed as a driver, it is undisputed that he was not on a mission for his employer at the time of the accident.
The plaintiff also argues that Medine v. Johnson, 600 So.2d 1373 (La.App. 1st Cir. 1992) supports his contention that Hair was in the course and scope of his employment at the time of this accident. The employee in Medine had just completed a delivery in his personal vehicle. While backing out of his employer's driveway on his way home, he struck one of his employer's customers within a few feet of the business premises. The factors which persuaded the appellate court to reverse summary judgment that had been granted in favor of the employer included the proximity of the accident to the defendant's property, the fact that the employee was a salaried driver with no set hours and the uncertainty in the record as to whether the employee was reimbursed for the use of his personal vehicle.
In the instant case, the record unequivocally reveals that Hair had never used his personal vehicle for business purposes, and he was not compensated for mileage or travel expenses. From Hair's description of the circuitous route which he took after leaving his work place, this accident took place an appreciable distance from his employer's premises. Although Hair was a salaried employee whose hours varied, there is also no question that he had completed his employment duties before he left his employer's premises that night. Hair's own testimony establishes that he had finished his work approximately an hour and a half before the accident occurred, and Meche, Hair's supervisor, testified that Hair was not on a job at the time of the accident.
Viewing the evidence in the light most favorable to the non-moving party, we find the record supports summary judgment rendered in favor of Chemical Control and Boston old Colony Insurance Company on this issue.

INDEPENDENT NEGLIGENCE
We now turn to the motion for summary judgment granted in favor of Chemical Control and its general liability insurer on the question of whether Chemical Control was negligent in furnishing alcohol to its employees or in permitting them to consume alcohol on its premises.
Chemical Control contends that it is entitled to the limitation of liability enacted in 1986 in favor of a tavern owner or social host who sells, serves or furnishes alcoholic beverages to one who can lawfully purchase them. La.R.S. 9:2800.1.
A concise history of the law of dramshop liability in Louisiana, particularly regarding an employer's liability, is found in Bourgeois v. Puglisi, 615 So.2d 1047 (La.App. 1st Cir. 1993):
Prior to the enactment of La.R.S. 9:2800.1 the legislature was silent regarding the issue of "Dram Shop" liability. The jurisprudence refused to impose absolute or strict liability upon a person furnishing alcoholic beverages for the consequences of a patron's intoxication. The consumption of alcohol, not its sale or serving, was considered to be the proximate cause of an alcohol related injury. However, a duty under La.C.C. art. 2315 was placed upon a bar owner to avoid affirmative acts which increase peril to an intoxicated patron. Thrasher v. Leggett, 373 So.2d 494 (La.1979).
The duty owed by an employer to an inebriated employee was found to be the same as that owed by a tavern owner to an inebriated patron, i.e., to avoid affirmative acts which increase the risk of peril to an intoxicated person. The same duty applied even if the employer furnished liquor to the employee at an event sponsored solely for the benefit of the employer's business. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980). Unless an employer were to require an employee to become intoxicated or possibly to perform an affirmative act to increase the peril caused by the employee's condition an employer would not be liable for acts of its employee performed outside the course and scope of employment. LeBlanc v. *1182 Adams, 510 So.2d 678 (La.App. 4th Cir.), writ denied, 514 So.2d 458 (La.1987).
615 So.2d at pgs. 1048-09.
Effective June 6, 1986, the legislature enacted La.R.S. 9:2800.1 to limit liability for social hosts, or persons who sell or serve intoxicating beverages, for any injury inflicted by the intoxicated person upon himself or others. That statute provides in part:

§ 2800.1. Limitation of liability for loss connected with sale, serving, or furnishing of alcoholic beverages
A. The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
B. Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana Revised Statutes of 1950 1, nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served.
C. (1) Notwithstanding any other law to the contrary, no social host who serves or furnishes any intoxicating beverage of either high or low alcoholic content to a person over the age for the lawful purchase thereof shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were served or furnished.
(2) No social host who owns, leases, or otherwise lawfully occupies premises on which, in his absence and without his consent, intoxicating beverages of either high or low alcoholic content are consumed by a person over the age for the lawful purchase thereof shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person who consumed the intoxicating beverages.
D. The insurer of the intoxicated person shall be primarily liable with respect to injuries suffered by third persons.
E. The limitation of liability provided by this Section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol. (Footnote omitted).
This statute codifies the policy statement in Thrasher v. Leggett, 373 So.2d 494 (La. 1979) that the consumption of alcoholic beverages, rather than the sale or serving of such beverages is the proximate cause of injuries inflicted by an intoxicated person upon himself or upon others. The statute not only codifies Thrasher, it further restricts the liability of retailers and social hosts because it does not impose liability for an affirmative act which increases the peril of intoxication. See Freeman v. Estate of Young, 552 So.2d 1285 (La.App. 5th Cir. 1989), writ denied, 556 So.2d 1281 (La.1990); Bertrand v. Kratzer's Country Mart, 563 So.2d 1302, 1303 (La.App. 3d Cir.), writ denied 569 So.2d 959 (La.1990).
The plaintiff argues that defendants are not entitled to the protection of La.R.S. 9:2800.1 because Chemical Control is neither a tavern owner nor a social host. We disagree. The record reveals that the only "act" committed by Chemical Control is that it allowed its employees to consume alcoholic beverages on its premises after they had finished working for the day. Under these circumstances, we see no reason why Chemical Control would not be considered a social host under either paragraphs C(1) or (2) above. See also Uhrbach v. Lin, 601 So.2d 755 (La.App. 1st Cir.) writ denied 604 So.2d *1183 1310 (La.1992), which held that there is no authority that would prohibit a person from allowing the consumption of alcoholic beverages on his premises by someone of lawful age.
Even if § 9:2800.1 did not apply in this case, the law governing Chemical Control's conduct could be found in prior jurisprudence such as LeBlanc v. Adams, 510 So.2d 678 (La.App. 4th Cir.), writ denied, 514 So.2d 458 (La.1987) and Brown v. Wolfe, 525 So.2d 355 (La.App. 1st Cir.), writ denied 530 So.2d 569 (La.1988). Those cases held that an employer who provided his employees with intoxicating beverages had a standard of care no higher than that of a tavern owner, i.e., to avoid affirmative acts which increase the peril of intoxication. Simply permitting an intoxicated person to leave the premises was not such an act. Brown, 525 So.2d at 357.
In Bourgeois, supra, the employer, a tavern owner, compensated a maintenance worker in credits to the worker's bar tab instead of wages. One evening, after collecting several of these "credits" at the bar, the employee left and shortly thereafter was involved in the accident which produced the plaintiff's injuries. The court affirmed summary judgment in favor of the employer, stating that neither crediting the employee's bar tab for the amount of wages earned nor allowing the employee to leave in an intoxicated condition was a breach of any duty owed by the employer to a third person who may be injured off the premises.
We find Bourgeois persuasive. If paying an employee in credits to his bar tab and, as in Brown, supra, actually serving intoxicating beverages to employees were not affirmative acts which increased the peril of intoxication, then simply permitting employees to consume liquor on business premises could not subject the employer to liability. This conclusion is reached only because the record shows that Hair did not begin drinking until he finished his employment duties and that he was not on a company mission at the time of the accident. As Hair testified in his deposition:
Q. What time was this, Jeff getting beer at the Chevron station?
A. I guess around 9:00 or 9:30 while I was finishing working.
Q. Were any salesmen there?
A. No.
Q. Who else was at the shop?
A. I think Tony was for a little while, but he left before.
* * * * * *
Q. So when Jeff returned with a twelve-pack of beer, no one's there but you; is that correct?
A. Yeah.
Q. So after he returned with the beer, what happened next?
A. Nothing. I was through working.
Q. So ya'll just sat down and drank the beer?
A. Yes.
* * * * * *
Q. After you finished drinking the beer that you drank, what did you do?
A. WasProceeded to go home.
* * * * * *
Plaintiff next argues that Chemical Control was negligent in permitting Hair to drink on its premises when its employees knew that Hair had a drinking problem. In Bertrand, 563 So.2d at 1304, we rejected a similar argument and held that a tavern owner did not breach any duty to the public by serving liquor to a customer who was known to abuse alcohol.
Plaintiff finally contends that Chemical Control should be responsible for his injuries because Chemical Control allegedly violated 49 C.F.R. § 392.5, which prohibits drivers from consuming intoxicating beverages or being under their influence while on duty or while operating a motor vehicle. We find that no such violation occurred. That regulation is applicable only to a "motor vehicle" that is used "for the transportation of passengers or property or any combination thereof...." 49 C.F.R. § 390.5. Hair's personal vehicle does not fit within this definition. Further, we cannot conclude that Hair was drinking while "on duty." He himself declared that he was through working when Meche returned with the beer.
*1184 For the above reasons, we find the trial court properly granted summary judgment in favor of Chemical Control, Inc., Boston Old Colony Insurance Co., and Certain Underwriters at Lloyd's London.
The judgment of the trial court is affirmed in its entirety. Costs of this appeal are assessed to appellant, James A. Vaughan.
AFFIRMED.
COOKS, J., dissents without written reasons.