JjCOOKS, J.
This is a course and scope of employment case, in which an injured motorist and her husband, Annie Young and Joseph Young (Plaintiffs) brought an action at the trial court to recover personal injury damages from Anthony C. Mooney, Mooney’s auto insurer, Louisiana Farm Bureau Mutual Insurance Company, Mooney’s alleged employers-Lower Cameron Hospital Service District (LCHSD) and Lower Cameron Ambulance Service District (LCASD)- and the employers’ insurer, Empire Indemnity Insurance Company (collectively Defendants), for injuries caused when Mooney collided into Mrs. Young’s vehicle.
Prior to a trial on the merits, Defendants moved for summary judgment contending Mooney was not engaged in his employment with LCHSD. They asserted, at the time of the accident, he substantially deviated from the course and scope of his employment. The trial court granted summary judgment in favor of Defendants and issued a final judgment dismissing Plaintiffs’ action. For the following reasons, we affirm the trial court’s grant of summary judgment and final judgment.
FACTS
Prior to the accident, Mooney worked as an emergency medical technician (EMT) for LCHSD. He was employed as a paramedic and ambulance driver on February 1, 1994. During the month of August, 1998, he was instructed by LCHSD to attend an EMT instructor’s seminar beginning on Sunday, August 28, 1998 and ending on Thursday, August 27, 1998, in Roberts, Louisiana[1]. Mooney drove his own car to the seminar. The objective of the seminar was to train and certify him to teach other EMTs. Mooney’s deposition reveals the conference ended at 8:00 p.m. that Thursday and that he intended to drive home to Cameron, Louisiana where he | ¿resides.
Mooney left the seminar in Roberts heading home sometime after 8:00 o’clock that evening. Prior to reaching his destination, Mooney testified he followed his friend Tiffany, a registered nurse who also attended the seminar, to her apartment in Baton Rouge. He remained at Tiffany’s apartment for approximately thirty minutes. While at Tiffany’s apartment, he called his friend Thomas Widcamp in Westlake, Louisiana and arranged to meet him at a Travel Lodge Motel on the north side of Lake Charles, Louisiana. Prior to reaching his destination at the motel, Mooney stopped off at a convenience store in *1110 Lake Charles and purchased a six pack of beer and a twenty-four ounce can of beer. Mooney arrived at the motel around midnight, and then he and his friend Widcamp sat around Widcamp’s motel room drinking beer. He stated he had about two beers over the course of forty-five minutes. They remained in the motel room until about 1:30 a.m., when he and Widcamp decided to go to Cowboy’s, a bar in Lake Charles, until Widcamp’s girlfriend got off from work at another location. They had a few beers at Cowboy’s and remained there until approximately 3:00 a.m., when Widcamp received a page from his girlfriend indicating she was ready to be picked up. From Cowboy’s, the two traveled to Sulphur, Louisiana, ten to fifteen miles west of Lake Charles, to Widcamp’s girlfriend’s mother’s house. From there, the three returned to the motel room in Lake Charles, arriving at about 4:00 a.m. According to Mooney, he then laid down and watched television. At some point, he “dosed off a little bit,” and then left Wid-camp and his girlfriend at the motel at about 5:30 a.m. to return to his home in Cameron. He recalled traveling east on La. Hwy. 14 to Manchester Road where he stopped because he was falling asleep. He stated he got out of his vehicle and walked around the car a couple of times, apparently to wake himself up, and then got back in the car to continue home. Somewhere in the course of returning home, Mooney fell asleep hat the wheel, crossed the center lane on La. Hwy. 14, and collided head first into Mrs. Young’s vehicle. She suffered serious bodily injuries. The record reveals the accident occurred at about 6:30 a.m. that morning. Trooper Sal Messina’s police report indicates he administered several field sobriety test to Mooney because he detected an odor of alcohol coming from Mooney’s breath. The report states Trooper Messina was convinced, from the field sobriety test he administered, that Mooney was impaired. He read Mooney his rights and placed him under arrest. About one and a half hours after the accident, Mooney was given a Breathalyzer Test which indicated he had a blood alcohol content (BAC) of .lllg %.
There is no dispute Mooney caused the accident when his vehicle crossed the center lane and careened into Mrs. Young’s vehicle. There is no dispute he was drinking prior to the accident and that he had a blood alcohol content of .lllg.% at 7:45 a.m, shortly after the accident. The sole question which gives rise to this appeal centers on whether Mooney’s employers are vicariously liable for the injuries he caused after he left the seminar and had “a night out with friends”. The trial judge granted summary judgment in favor of the employers and their insurers finding no genuine issue of material fact remained and as a matter of law defendants were not legally liable because, at the time of the mishap, Mooney was not engaged in the scope and course of his employment. For the reasons which follow, we agree.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that governs the trial judge’s consideration of whether a summary judgment is appropriate. Palm-Air Civic Ass’n, Inc. v. Syncor Intern., 97-1485 (La.App. 4 Cir. 3/4/98); 709 So.2d 258. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, Land the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The summary judgment procedure is favored and should be construed to accomplish the just, speedy, and inexpen *1111 sive determination of actions. La.Code Civ.P. art. 966(A)(2).
The initial burden of proof is on the mover to show no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). Once the mover has made a prima facie showing no genuine issue of material fact exists, the motion should be granted. Id. However, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him or her to present evidence demonstrating material factual issues still remain. La.Code Civ.P. art. 966(C)(2); Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41; J. Ray McDermott, Inc. v. Morrison, 96-2337 (La. App. 1 Cir. 11/7/97), 705 So.2d 195, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 754.
When a motion for summary judgment is supported, an adverse party may not rest on the mere allegations or denials in his pleading. His response, by affidavits or as otherwise provided by law, must set forth specific facts showing there is still a genuine issue of material fact for trial. La.Code Civ.P. art. 967; Palm-Air Civic Ass’n., Inc., 709 So.2d 258.
LAW AND ANALYSIS
Plaintiffs contend the trial court erred in granting summary judgment in favor of Defendants and dismissing their action for damages. They assert the issue of whether Mooney substantially deviated from the course and scope of his employment with LCHSD is strictly a question of fact and should have been decided by a jury.
Every course and scope of employment case must be judged under its own set of facts. Vaughan v. Hair, 94-86 (La.App. 3 Cir. 10/5/94); 645 So.2d 1177, writ Udenied, 95-0123 (La.3/10/95); 650 So.2d 1186. This court has stated in determining whether an employee is engaged in the course and scope of his employment, at the time of an accident, we must first decide whether his activities were “‘so closely connected in time, place and causation to his employment-duties as to be regarded as a risk of harm fairly attributable to the employer’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interest.’ ” Id. at 1180.
The general rule is that an employee traveling to and from work who has an accident is not engaged in the course and scope of employment “to such an extent as to render his employer hable to third persons for the employee’s negligent acts.” Id; Phipps v. Bruno Const., 00-0480 (La.App. 3 Cir. 11/14/00); 773 So.2d 826; Bell v. Hurtstell, 99-1333 (La.App. 4 Cir. 6/16/99); 743 So.2d 720; Hughes v. Gearhart Indus., Inc., 552 So.2d 717 (La. App. 1 Cir.1989), writ denied, 556 So.2d 1280 (La.1990). The employment relationship is ordinarily suspended when the employee leaves work to go home until he returns to work. Phipps, 773 So.2d 826.
Louisiana jurisprudence, however, has recognized three exceptions to this general rule. An employee’s accident has been found to occur within the course and scope of his employment under following circumstances: (1) the employer provides the transportation the employee uses to go to and from work; (2) the employer provides expenses or wages for the time spent traveling in the vehicle; and (3) if the operation of the vehicle is incidental to or is actually the performance of some employment responsibility. Vaughan, 645 So.2d 1177. “[Cjonnexity is established when at the time of the accident the employer had reason to expect that the employee would undertake the mission and the employee had reason to expect to be *1112 compensated for it .... A minor deviation from the mission will not remove the employee from the mission if it is ‘humanly incidental to his service as an employee Land [if it] does not unreasonably increase the risk of injury.’ ” Hughes, 552 So.2d at 719 (citing Robinson v. F. Strauss & Son, Inc. 481 So.2d 592 (La.1986)).
The supreme court in Timmons v. Silman, 99-3264, p. 4 (La.5/16/00); 761 So.2d 507, 510-511, recently addressed the employment deviation issue. The court stated,
[u]nder Louisiana law, an employer is answerable for the damage occasioned by its servants in the exercise of the functions in which the servant is employed. La. Civ.Code art. 2320. Specifically, an employer is liable for its employee’s torts committed if, at the time, the employee was acting within the course and scope of his employment. Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 996. An employee is acting within the course and scope of his employment when the employee’s action is “of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer.” Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226-27. An employee may be within the course and scope of his employment yet step out of that realm while engaging in a personal mission. See Denis Paul Juge [sic], Louisiana Workers’ Compensation § 8:8, at 8-59 (2nd ed.1999).
The mere fact that an employee is performing a personal errand while on an employment related errand does not automatically compel the conclusion that the deviation removes the employee from the course and scope of ¡employment. Generally, “[a]n identifiable deviation from a business trip for personal reasons takes the employee out of the course of employment until the employee returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial.” 1 Larson’s Workers’ Compensation Law § 17-1 (emphasis added); see also Malone & Johnson, 13 Louisiana Civil Law Treatise, Workers’ Compensation § 174, at 405 & n. 1. (Emphasis added).
Summary Judgment For LCHSD[2]
On appeal Plaintiffs argue LCHSD is vicariously hable, under La.Civ.Code art. 2320, for the damages caused by LCHSD’s servant (Mooney), because at the time of the accident he was engaged in the course and scope of his employment.
On Thursday, August 27, 1998, when Mooney left the seminar, his intent was to return to his home in Cameron, Louisiana. As we have already stated, the ^employment relationship is ordinarily suspended when the employer leaves work to go home until he returns to work again, unless one of the recognized exceptions exists. Phipps, 773 So.2d 826. Exception one is clearly inapplicable because Mooney was operating his own vehicle. Plaintiffs strongly suggest exceptions two and three are applicable because Mooney was provided expenses for the time he spent traveling in his vehicle; they argue his operation of the vehicle was actually in the performance of his employment responsibilities. Although LCHSD paid for the cost of Mooney’s seminar, including his room and board, there is no question he had com *1113 pleted his employment duties when he left the seminar on Thursday, August 27, 1998 to return home. Mooney deviated far from any employment related activities by the time he phoned Widcamp from Baton Rouge and arrived at the motel room. “[Cjonnexity is established when at the time of the accident the employer had reason to expect that the employee would undertake the mission and the employee had reason to expect to be compensated for it....” Hughes, 552 So.2d at 719. It cannot genuinely be said, in this instance, that LCHSD had reason to expect Mooney would undertake a mission to go out drinking and socializing with his friend until 4:00 a.m. in the morning, drive his vehicle on the highway under the influence of alcohol, and then cause a serious accident. LCHSD’s training objective was to train and certify Mooney to teach other paramedics.
Even Mooney did not expect to be compensated for his night out. Though Mooney was reimbursed for travel expenses, the record reveals he was not paid expenses for his travel from Cameron to Roberts on his arrival to the seminar, or from Roberts to Cameron on his return trip home. Mooney testified he was paid wages and expenses only during his attendance at the seminar. The record also indicates Mooney was not on call that Friday or the entire weekend after the accident. Mooney stated when he met up with his friend in Lake Charles, he considered this to be “a |snight out with friends.”
These events, among other things, convince us when Mooney left the seminar, he was pursuing his own personal endeavors, and engaged in activities far removed from his employment duties. The necessities of the EMT training seminar or employment with LCHSD did not require him to visit his friend in Baton Rouge or his friend in Lake Charles. These actions were not humanly incidental to his service as an employee to LCHSD, and they unreasonably increased his risk of injury. Hughes, 552 So.2d 717. LCHSD could not have reasonably anticipated Mooney would venture into a “night out with friends”, go out drinking and socializing until 4:00 a.m. in the morning, or begin to drive home at 5:30 in the morning, presumably sleep deprived, and under the influence of alcohol.
We believe no reasonable fact finder could say Mooney’s accident was so closely connected in time, place and causation to his employment-duties as to be regarded as a risk of harm fairly attributable to LCHSD’s business. Vaughan, 645 So.2d 1177. We also find Mooney’s deviation in Baton Rouge and Lake Charles was so far from LCHSD’s employer’s training object in Roberts, Louisiana, it cannot be reasonably said that these deviations were insubstantial.
Plaintiffs additionally argue even if we find Mooney substantially deviated from his employment duties, he still was engaged in the course and scope of his employment because he was sent to the seminar at the request of LCHSD and would not have been returning from Roberts, Louisiana had it not been in his employer’s interest. Plaintiffs also suggest if Mooney did deviate from the course and scope of his employ, by the time he returned to his original route home the morning of the accident, he had re-engaged in the course and scope of his employ. In short, Plaintiffs essentially argue that Mooney was on an employment related errand, briefly deviated from his business trip for personal reasons, but returned to the route of his 13business trip on the morning of August 28, 1998, just prior to the accident. This is the exact argument the plaintiff in Timmons advanced. See 761 So.2d 507.
*1114 It is true Mooney would not have been at the seminar but for his employer’s request; however, his employer had absolutely no reason to have Mooney venture into personal endeavors on his trip home. Assuming arguendo that Mooney was still engaged in the course and scope of his employ when he left the seminar, we have already concluded his deviation in Baton Rouge and Lake Charles was not insubstantial. Mooney’s actions unnecessarily increased LCHSD’s risk. LCHSD had an explicit policy against drinking on duty. Indeed, Mooney testified he was aware of LCHSD’s written and stated policy against drinking on duty. Mooney unreasonably increased his employer’s risk when he decided to party in Lake Charles, put himself under the influence of alcohol, and attempt to drive home without adequate sleep. These endeavors were necessarily personal endeavors that clearly took him outside the course and scope of his employment.
Even though Mooney returned to his route heading home the morning of the accident, his personal endeavors after the seminar and leading up to the accident, were so far from his employer’s objective and interest, one cannot reasonably maintain he had reentered the course and scope of his employ. Arguably, but for Mooney’s personal decision to socialize, drink, and drive under the influence of alcohol, it is highly likely the accident would not have occurred.
Nonetheless, Plaintiffs proffer three cases they contend support their claim that Mooney reentered the course and scope of his employ after leaving Wid-camp’s motel at 5:30 a.m. that Friday morning: Bell v. Farmer’s Ins. Group, 580 So.2d 547 (La.App. 4 Cir.1991); Blakeway v. Lefebure Corp., 393 So.2d 928, writ denied, 399 So.2d 610 (La.1981); and Timmons, 761 So.2d 507.
The court in Bell denied an employer’s insurer’s ( the defendant) request for Lnsummary judgment after a California employee, Dr. Robert Bell, was killed in an accident while attending a work related conference in Vicksburg, Mississippi. Bell, 580 So.2d 547. With the consent and approval of their employer, Dr. Bell and another colleague flew from California to New Orleans even though other colleagues flew directly to Mississippi. Once in New Orleans, the two rented a car and drove to Vicksburg for the conference. Id. At the conclusion of the conference, the two drove back to New Orleans where the court found it was their intent to spend a night at a local hotel and then fly back to California the following afternoon. The court also found it was their intent to do some sight seeing while in New Orleans. Id. When they got to New Orleans, however, and began looking for accommodations, Bell’s colleague, the driver of the vehicle, apparently disregarded a traffic signal and a fatal collision ensued. Dr. Bell was killed. Id. The trial court granted the defendant’s request for summary judgment concluding there were no genuine issue of material fact that precluded a grant of summary judgment in that case. The Fourth Circuit reversed and remanded the trial court’s decision after finding that genuine issues of material fact existed regarding whether or not Dr. Bell’s employer exercised control over him for the purpose of determining who leased the car, Bell, or Bell’s employer. Id. On remand, the trial court again granted defendant’s request for summary judgment and Dr. Bell’s heirs again appealed. See Bell v. Farmer’s Ins. Group, 93-2067 (La.App. 4 Cir. 4/14/94); 635 So.2d 1305.
The Fourth Circuit eventually found Dr. Bell’s employer had exercised control over his decisions in New Orleans by specifying what rental car company Bell and his colleague should use. The court found the *1115 car was paid for with a company credit card, and found that the parties agreed that Bell would pay for the car. On these facts, the court found their was a genuine issue of material fact whether Bell’s employer rented the car or whether Bell rented the car.
InPlaintiffs point out, in their discussion of the second Bell case (Bell-II), specific language quoted by the Fourth Circuit from its decision in Renfroe v. City of New Orleans, 394 So.2d 787 (La.App. 4 Cir. 1981), writ denied, 399 So.2d 621 (La.1988). They suggest that the court’s holding recognizes course and scope of employment cases as purely factual in nature; and further argue if this is so, then summary judgments should not be granted in such cases.
The language in Bell-Il reads as follows: “The issue of when “work’ stopped and ‘personal activities’ began is purely factual and is an improper subject of summary judgment in this case.” Bell, 635 So.2d at 1310 (emphasis added). Plaintiffs’ argument misses the point. Course and scope of employment cases are indeed factual in nature. However, it is because of the specific facts in the instant case that we conclude the trial court’s grant of summary judgment in favor of Defendants, on this issue, was not erroneous. For the same reasons, the trial court in BélV-II concluded summary judgment was improper-“in [that] case.” Id.
We also find the facts in Blakeway can be distinguished from the facts in the instant case. In Blakeway, an employee was injured at a two-week seminar while diving in a pool at the motel where the seminar was being held. Blakeway, 393 So.2d 928. The workers’ compensation judge dismissed the employee’s suit against his employer and his employer’s insurer. On appeal, the Fourth Circuit found the necessities of the employer’s business reasonably required the employee to be at the place of the accident at the time the accident took place. Id. In other words, but for the employer’s business, the employee would not have been in that particular pool, at that particular motel. The same cannot reasonably be said for Mooney’s personal ventures in Baton Rouge and Lake Charles.
Finally, Plaintiffs proffer Timmons to support their claim that if Mooney deviated from the course and scope of his employ, he reentered it the morning he left 112Widcamp’s motel to return to Cameron. Though we disagree with Plaintiffs’ claim here, we find the supreme court’s holding in Timmons supports our conclusion that Mooney’s deviations were so extreme, one cannot reasonably find he reentered the course and scope of his employ for LCHSD. In Timmons, the court found the employee stepped out of the course and scope of her employ when she decided to run a personal errand immediately after completing an employer related errand. 761 So.2d 507. The personal errand took the employee several blocks past her place of employment where she was subsequently involved in a motor vehicle accident. The court found that although the employee was engaged in the course and scope of her employment when she ran the employer related errand, the employee stepped outside the course and scope of her employment when she ran the personal errand. The court further concluded the employee’s deviation was not an insubstantial deviation because the employee “exposed her employer to risk of liability as she unilaterally decided to perform a personal errand after she essentially completed her employment errand....” Id. at 513. The court reasoned that, ‘“[i]f the incidents of the deviation itself are operative to producing the accident, this in itself will weigh heavily on the side of non-compensa- *1116 bility.’ ” (quoting Larson’s Worker’s Compensation Law § 17.06(1), at 17-83). Id. at 512 It is clear, in this instance, Mooney’s unilateral decision to socialize, drink, and drive sleep deprived, were profoundly operative in producing the accident discussed herein.
Though it is indeed a grave misfortune Mrs. Young was seriously injured as a result of Mooney’s alleged negligence, and we surely sympathize with her as victim in this unfortunate scenario, the very nature of the forgoing factors overwhelmingly establishes that Mooney exposed his employer to risks which were not inherent in his employment. Since summary judgments are now favored, and because we find there is no genuine issue of material fact regarding whether Mooney was acting within the 1 ^course and scope of his employment at the time of the accident, we conclude LCHSD cannot be held vicariously liable, under La.Civ.Code art. 2320, for the accident caused by Mooney on the morning of August 28,1998.
DECREE
For the foregoing reasons, the judgment of trial court granting summary judgment in favor of Defendants and dismissing Plaintiffs’ action with prejudice is hereby affirmed. AH costs of this proceeding are assessed against the appellants, Mr. and Mrs. Young.
AFFIRMED.

. Roberts, Louisiana is located east of Baton Rouge, Louisiana, north of Lake Pontchartrain, and just south of Hammond, Louisiana. Roberts is approximately 185-200 miles from Lake Charles, Louisiana.

. We note Plaintiffs do not challenge on appeal the trial court's grant of summary judgment in favor of LCASD. Our decision to affirm the summary judgment renders this issue moot.